The city of New Bern is located at the junction of Neuse and Trent rivers, and the streets running north and south terminate, at the southern end, at Trent River, and the streets running east and west terminate, at the eastern end, at Neuse River. This has been the condition for more than one hundred years. Craven Street is a public highway of New Bern, running through the residential and business sections, passing the courthouse, postoffice, city hall, and other public places in the city. The southern terminus of said street is at Trent River. This terminus is used as a dock or public wharf and has been so used for fifty years or more. The surface of the street is about seven feet above the water and terminates abruptly above deep water. At the time of the injury complained of warehouses had been erected on both sides of the terminus of said street, extending therefrom and in line therewith *Page 509 
into the water a distance of 125 or 150 feet, leaving a body of water known as a boat slip between the warehouses and up to the terminus of the street. The street had been paved by the city of New Bern with oyster shells, and some eighteen or twenty years ago the street was paved with brick up to the terminus, leaving a slight incline from the terminus, extending back for some feet northward. A railroad track was laid across the southern end of Craven Street about ninety feet from the terminus. A large are light had been placed on the eastern sidewalk or curbing of Craven Street at a distance of seventy-six feet from the terminus of the street at deep water. Craven Street runs north and south. Up until about seven years ago there was a wharf log at the terminus of the street which extended about eight or twelve inches above the surface thereof. This wharf log had rotted away. On the night of 22 April, 1925, Mitchell Willis, the deceased, came into New Bern on a boat and docked at the Hollister Cox warehouse or wharf about 150 feet from the terminus of Craven Street. The deceased lived in Carteret County, but had visited New Bern at intervals. The night of 22 April, was a dark, rainy night, and the streets were wet. Mitchell Willis borrowed a Ford car from his brother, taking with him a boy named Clyde Gray, and in driving along Craven Street, drove off the terminus thereof into deep water, killing himself and the boy who was riding with him. At the time of his death the deceased was 21 years old.
There was no barrier, rail, guard, light or any device for giving notice that the street terminated abruptly above deep water. The plaintiff contends that it constituted negligence to leave the street in this condition, and particularly so, when the warehouse extended out into the water on each side of the street, which would give the impression to a traveler not actually acquainted with the conditions, that the street extended certainly to the length of these warehouses. The defendant contended that the arc light on the curb stone on the east side of Craven Street furnished sufficient light to warn the plaintiff's intestate of danger if he had been keeping a proper lookout, and that the river itself was also a warning of danger.
The issues and answers of the jury thereto were as follows: (1) Was plaintiff's intestate killed by the negligence of the defendant as alleged in the complaint? Answer: Yes. (2) If so, did plaintiff's intestate, by his own negligence contribute to and cause his death as alleged in the answer? Answer: No. (3) What damage, if any, is plaintiff entitled to recover from defendant? Answer: $8,000. (4) Did plaintiff, D. H. Willis, qualify as administrator of Mitchell Willis' estate? Answer: Yes.
From judgment upon the verdict the defendant appealed. *Page 510 
Craven Street in the city of New Bern terminates abruptly at deep water on Trent River. The surface of the street at this terminus is seven or eight feet above the water of the river.
The courts have universally held that a street includes the roadway, or traveled portion, and sidewalks. A street must also include the terminus thereof. Public highways belong, from side to side and end to end, to the public, and the rule is well founded both in reason and judicial pronouncement that the public is entitled to free passage along any portion of it. Elliott on Roads and Streets, 2d vol., sec. 828; Graham v.Charlotte, 186 N.C. 663. It is essential to the public safety that the terminus of a street shall be kept in as reasonably safe condition as any other portion thereof, for the manifest reason that it would be obviously futile to charge municipal authorities with the duty of keeping a street in a reasonably safe condition and yet permit it to terminate abruptly in an unsafe and dangerous manner. It would be a ruthless doctrine to allow a public highway to be improved for its entire length and thereby invite a traveler thereon, and, after being lulled into a sense of safety, to be suddenly put to death by an unguarded embankment, precipice, or other dangerous defect, when such defect was known or could have been discovered by the exercise of reasonable diligence, and when, of course, the traveler was using due care for his own safety.
While it appears that there was a dock or wharf at the terminus of Craven Street, it also appears from the evidence that the city of New Bern had originally paved the street with oyster shells to the wharf log, and fifteen or eighteen years ago had paved the street with permanent paving up to the wharf log. It is immaterial therefore as to whether this street terminated in a public wharf or a dock for the reason that the city had exercised control over every part of the street, including its terminus, for many years. Indeed, the overwhelming weight of testimony introduced by the defendant was to the effect that the terminus of this street had been used by the public in connection with the street itself for more than fifty years. So that, as far as the rights of the parties are concerned, this wharf or dock was the terminus of one of the principal streets of the city of New Bern, and therefore the liability of the defendant must be governed by the established rules of law regulating streets and highways.
What then are the duties which the defendant owed the public?
The decisions of this State, and, indeed, of all the states, have established and imposed the following positive obligations upon municipal authorities with reference to streets and highways, to wit: (1) They *Page 511 
shall be constructed in a reasonably safe manner, and to this end ordinary care must be exercised at all times; (2) They shall be kept in proper repair or in a reasonably safe condition to the extent that this can be accomplished by proper and reasonable care and continuing supervision; (3) proper repair implies that all bridges, dangerous pits, embankments, dangerous walls and the like perilous places and things very near and adjoining the streets shall be guarded against by proper railings and barriers or other reasonably necessary signals for the protection of the public. Russell v. Monroe, 116 N.C. 720; Neal v. Marion, 126 N.C. 412;Fitzgerald v. Concord, 140 N.C. 110; Brown v. Durham, 141 N.C. 249;Darden v. Plymouth, 166 N.C. 492; Foster v. Tryon, 169 N.C. 182; Dukev. Belhaven, 174 N.C. 96; Stultz v. Thomas, 182 N.C. 470; Goldstein v.R. R., 188 N.C. 636.
It is further established by the decisions referred to that a municipal corporation is not an insurer of the safety of its streets, nor is any duty imposed upon it to warrant that the condition of its streets shall at all times be absolutely safe. Neither will the breach of such duties imposed, warrant a recovery by the mere showing that a defect existed and that an injury has resulted proximately therefrom. It must be further shown that the governing authorities of the municipality had notice of the defect. This essential notice arises from: (1) Actual notice or knowledge directly imparted to the proper officials of the municipality; (2) implied, constructive or imputed notice. The principle creating and governing, implied, constructive or imputed notice is thus stated in Shearman 
Redfield on the Law of Negligence, 6 ed., vol. 2, sec. 369: "Unless some statute requires it, actual notice is not a necessary condition of corporate liability for the defect which caused the injury. Under its duty of active vigilance, a municipal corporation is bound to know the condition of its highways, and for practical purposes, the opportunity of knowing must stand for actual knowledge. Hence, where observable defects in a highway have existed for a time so long that they ought to have been observed, notice of them is implied, and is imputed to those whose duty it is to repair them; in other words, they are presumed to have notice of such defects as they might have discovered by the exercise of reasonable diligence."
The decisive question is therefore presented as to whether or not, under the circumstances existing, it was the duty of the city of New Bern to erect a barrier, red light, chain, or other device for the protection of the public at the terminus of this street.
It must be conceded that if the terminus of this street was a dangerous place, then it was the duty of the city, under our decisions, to exercise ordinary care for the protection of the public. The principles of safety deduced from the authorities require municipal corporations to use *Page 512 
ordinary care not only in protecting dangerous places in the street itself, but also to cover dangerous places near the street or highway. As stated byJustice Connor in Goldstein v. R. R., 188 N.C. 639: "If the hole or excavation had not been there or if a fence or rail had been erected between the road and the hole, plaintiff would not have been injured." Dukev. Belhaven, 174 N.C. 96; Bunch v. Edenton, 90 N.C. 431; Brown v.Durham, 141 N.C. 249.
In Brown v. Durham, supra, the principle imposing liability upon municipal corporations to guard dangerous places on or near the street is squarely presented thus: "The judge below charged the jury that it would be a breach of duty on the part of the city for it to permit a hole or washout one or more feet wide and eight inches or more deep, and extending two feet or more across the sidewalk, adjacent to and opening into a large hole five feet or more deep and four feet in diameter just outside of the sidewalk, to remain without light and without railing or barriers to protect the samefor an unreasonable length of time." The trial judge further charged the jury that if such a hold had been permitted to remain near the sidewalk of a much used street in the city of Durham, without rails or barriers or light to guard such a hole for a space of ten days, it would constitute an unreasonable length of time. The rules of liability so laid down by the court were approved in the opinion written by Justice Hoke.
It must be borne in mind, however, that a traveler using a highway or street must exercise ordinary care for his own protection and safety.
The trial judge charged the jury fully upon this aspect of the case. In defining the duty of the plaintiff's intestate, under the circumstances, the trial judge, at the request of the defendant, charged as follows: "A traveler using the public streets of a city is required to exercise ordinary care and prudence to observe obstructions or defects in the street or road traveled; and if the jury shall find from the evidence that the plaintiff's intestate carelessly, or without due care and observation, drove down the end of Craven Street and into the water when said street was lighted so that a person exercising ordinary care could have observed the condition thereof and avoided the injury, then, though the jury might find that the city had been negligent, yet such negligence would not be the proximate cause of the injury and the jury would answer the first issue, no. The right of a person to use a street for the purpose of public travel does not excuse the traveler from being required to take into consideration the right not only of his fellow travelers and others who may use the highway for purposes other than those of traveling and to conform to its uses and customs which have grown up with civilization or commerce of the city in which the road or street is constructed." *Page 513 
This charge was perhaps more favorable to the defendant than it was entitled to under the law.
The court further charged that if the plaintiff's intestate knew of the condition of the terminus of Craven Street, and notwithstanding the same, drove down said street at a high rate of speed, this would constitute contributory negligence, and the jury should answer the issue relating thereto in the affirmative.
The court further charged the jury that if the plaintiff's intestate was violating the speed limit at the time of his death, that this caused or contributed to his death, he would not be entitled to recover; and further, that if plaintiff's intestate was driving at such a rate of speed so that the radius of the lights of his car would not bring out the terminus of the street and the water at the end thereof in time to have stopped the same and avoided the injury, plaintiff was not entitled to recover.
These instructions and others of similar import so given by the trial judge imposed to the fullest extent the obligation of ordinary care required of plaintiff's intestate.
Applying the law to the facts disclosed by the record, it appears that there was competent evidence tending to show: (1) That the terminus of Craven Street was dangerous; (2) that the particular danger at this particular place imposed upon the defendant the duty to erect a guard, rail, barrier, light, or some adequate device for giving reasonable notice of the danger to a traveler using said street in a lawful manner and for a lawful purpose; (3) that the conditions had existed for such a period of time as to constitute legal notice to the municipal authorities of said danger; (4) that the plaintiff's intestate, at the time of his death, under the circumstances existing, was exercising reasonable care for his own safety.
The jury by its verdict, under a proper charge from the court, and upon competent evidence, has established the liability of the defendant, and the judgment rendered thereon must be upheld.
There are eighty-two exceptions in the record and a separate discussion of each would draw out this opinion to a burdensome and intolerable length, and therefore they will not be considered seriatim.
There is a group of exceptions based upon testimony relating to the condition of other streets in the city of New Bern and the terminus of other streets in the city of New Bern. It was strongly intimated, though not expressly decided, in Dowell v. Raleigh, 173 N.C. 197, that evidence of similar defects, obstructions or conditions in the immediate vicinity, is admissible as tending to show the existence of a particular defect or to fix constructive notice thereof on the municipality. *Page 514 
However, this may be, the defendant in the cross-examination of plaintiff's witnesses undertook to show the condition of other streets in the city of New Bern, and for this purpose submitted a diagram of certain streets of the city. Thereupon the plaintiff, replying to this evidence and attempting to explain it, offered testimony as to barriers or other protection at the termini of these streets in the city.
In Cook v. Mebane, ante, p. 1, the opinion written by Clarkson, J., holds that "the erroneous admission of evidence on direct examination is held not to be prejudicial when it appears that on cross-examination the witness was asked substantially the same question and gave substantially the same answer." Hanes v. Utilities Co., ante, 19; Gentry v. UtilitiesCo., 185 N.C. 286; Ledford v. Lumber Co., 183 N.C. 614; Marshall v.Tel. Co., 181 N.C. 292.
In other words, the rule is, that if evidence offered by one party is objected to by the adverse party and thereafter the objecting party elicits the same evidence, the benefit of the objection is lost, and further, if on cross-examination evidence is developed without objection, the adverse party can offer evidence in reply relating to the same questions, even though such evidence in reply might have been incompetent in the first instance.
A group of exceptions assails the competency of evidence admitted by the trial judge as to the effect of the street light upon a person driving a car at the place in controversy. The witness testified that the effect of the street light was to blind a person and that the result was "you would be in the river before you could stop the car." Visibility at the place complained of would be competent on the question of contributory negligence. In addition, a nonexpert witness who has observed a place, can from his observation and acquaintance, testify as to such matters of fact depending on his ordinary powers of observation. The identical question as to the effect of a light was discussed and held competent in Arrowood v. R.R., 126 N.C. 632. The principle is further amplified in: Britt v. R. R.,148 N.C. 40; Marshall v. Tel Co., 181 N.C. 292; S. v. Skeen, 182 N.C. 845;Graham v. Power Co., 189 N.C. 387.
The defendant contends that as the terminus of this street was a public dock or wharf, it would greatly interfere with commerce to have the same blocked with any sort of barrier or device to give warning to travelers. It is undoubtedly the mandate of sound public policy to encourage commerce and to lend to its legitimate expansion the full power of the law, but it is also true that the sanctity of commerce must yield to the sanctity of life, "for the life is more than meat and the body than raiment." *Page 515 
The carefully prepared briefs of counsel for the parties have been of helpful service in the investigation of the merits of this controversy, and upon the whole record we are forced to the conclusion that the principles of law have been properly applied by the trial judge and that the judgment as rendered should be upheld.
No error.