ANNIE P. HAMILTON v. CITY OF ROCKY MOUNT.

(Filed 1 October, 1930.)

1. **Municipal Corporations E a—Rule that city is not liable for negligence in discharge of governmental function has exception in case of streets.**

Although a municipal corporation is not liable for the negligence of its employees in the discharge of a governmental function, it is liable for such negligence in the discharge of a private or *quasi*-private function which is conferred not primarily or chiefly from considerations connected with the State at large, but for the private advantage of the community incorporated therein, but the rule that it is not liable for negligence in the discharge of a governmental function has an exception in the case of the proper maintenance and safe condition of its streets.

2. **Municipal Corporations E c—Complaint in this case held to state a cause of action against city for failure to properly maintain streets.**

Where, in an action against a city to recover for a personal injury, the plaintiff alleges that the city owned its own power plant and transmission lines for the generation and distribution of current for its own use and for the use of individuals for profit, and that, through its employees, it had dug a ditch and was laying a cable in a street for conducting current for lighting the street, and that the cable was pulled along the ditch by a motor vehicle which caused the cable to rise up out of the ditch when pulled taut, and that the plaintiff was injured by the cable rising up out of the ditch when she was attempting to cross the street, and that there

was no warning or notice that the street was in an unsafe condition: *Held*, a demurrer to the complaint on the ground that it appears therein that the city was discharging a governmental function is properly overruled, the liability of a city for injury caused by its negligent failure to properly maintain its streets and warn of danger in regard thereto being an exception to the rule that it is not liable for negligence in the discharge of a governmental function, and the decision of the question of whether in the instant case the city was discharging a private or governmental function is unnecessary.

3. **Pleadings D c—In this case held: defendant's demurrer was bad as a speaking demurrer and his demurrer ore tenus related to pleading to which formal demurrer was addressed.**

Where, in an action against a city to recover for a personal injury, the defendant interposes a demurrer on the ground that the complaint discloses that the injury was inflicted by the city in the discharge of a governmental function for which it could not be held liable, and the demurrer is sustained, and thereafter the plaintiff files an amended complaint stating a good cause of action, and the defendant interposes a demurrer thereto on the ground that the plaintiff was estopped by the judgment on the first demurrer: *Held*, the second demurrer, depending upon matters outside the pleading, is bad as a speaking demurrer, and defendant's motion for dismissal on the ground that the plaintiff was concluded by the former judgment and his offer to read the former pleadings is in effect a demurrer *ore tenus* which is allowed only after the filing of a formal demurrer and can be considered only in its relation to the pleading to which the formal demurrer is addressed, except when filed for want of jurisdiction or that the complaint fails to state a cause of action.

APPEAL by defendant from *Sinclair, J.,* at January Term, 1930, of NASH. Affirmed.

This is an action for damages for personal injury alleged to have been caused by the defendant, a municipal corporation created under the laws of North Carolina.

The amended complaint contained the following allegations:

3. That on and prior to 13 November, 1928, the defendant in its private and corporate capacity owned and operated a large steam plant, for the generation and distribution of electric current to the citizens of the city of Rocky Mount, and also to other persons, corporations and municipalities outside of the city, for profit; that for the distribution of said electric current, as aforesaid, the defendant owned and maintained a system of wires, poles, cables, transformers, etc., throughout the city of Rocky Mount, and elsewhere; that a part of the electric current which was transmitted over said distribution system was sold to the inhabitants of the city for profit, and a part thereof was used for the lighting of streets and sidewalks.

4. That the defendant also maintains a number of public streets and sidewalks within its corporate limits, among which are Western Avenue,

which runs east and west, and Church Street, which runs north and south, said two streets intersecting each other one block west of Main Street.

5. That on 13 November, 1928, the defendant, through its employees, was engaged in the construction of a street lighting system along the eastern side of Church Street, and in the progress of such construction was causing to be laid along the sidewalk on the east side of Church Street, in said city, a cable, the purpose of which was to supply electric current for the illumination of a great number of high-powered lamps, situate upon the top of iron or steel posts, which were to be erected along the eastern side of said Church Street; that said system of lamps when completed would constitute what is commonly called a white way, would illuminate the street, sidewalk and premises of abutting property owners, and would become an integral part of the city's distributing system; that said cable was being laid in a trench or ditch, which had been cut and drilled along the eastern side of Church Street on or near to the sidewalk, which extended along the eastern side of said street; that this trench or ditch intersected and crossed the sidewalks adjacent to Western Avenue, said trench or ditch being several inches in depth and several inches in width.

6. That at one end the said cable, which was approximately one and one-half inches in diameter, was mounted on an enormous stationary spool and drum, from which it was pulled or stretched along said sidewalk by means of a tractor or other motor vehicle, attached to the other end; that while the cable was inert it was lying in the bottom of the aforesaid trench or ditch, but when it was tightened or made taut by a pull from the tractor or other motor vehicle, it would suddenly rise out of the trench or ditch several feet, so as to obstruct Western Avenue and the sidewalks adjacent thereto; that during the laying of said cable the same was frequently jerked and caused to rise out of the bottom of said trench or ditch, the process being a continuous one in its nature, and at the time hereinafter complained of, had been going on and existing for several hours, or perhaps, even longer, the exact time being unknown to this plaintiff.

7. That the existence of said trench or ditch intersecting Western Avenue and the sidewalks adjacent thereto, as above described, and the laying of the cable across said street and sidewalks, as aforesaid, created and constituted an obstruction and dangerous condition upon said street and sidewalks, of which said obstruction and dangerous condition the defendant had actual knowledge, or if it did not have actual knowledge of such obstruction and dangerous condition, in the exercise of reasonable care and diligence, could have and should have, had such knowledge.

8. That on the afternoon of 13 November, 1928, plaintiff, in company with her daughter, started from her home along Western Avenue,

which intersects Church Street, as above described, and as she approached said intersection she noticed that there was some work going on in that vicinity, but she also noticed that other travelers and pedestrians were crossing the intersection and going along said street and sidewalk; that there was no sign posted in the vicinity of said ditch and cable warning the public of any existent danger, nor were any signals or warnings given to the plaintiff that there was any obstruction or danger; that plaintiff and her daughter, in full view of the employees who were engaged in the laying of said cable, as aforesaid, started across the intersection of said streets as they saw other pedestrians doing; and plaintiff's daughter stepped over said ditch, at the bottom of which the said cable was lying, and was proceeding along the sidewalk adjacent to Western Avenue toward Main Street, but when the plaintiff, who was just behind her daughter, was attempting to get over said ditch, said cable suddenly, and with great and terrific force, came up, as it had been continuously doing throughout the period of the laying of said cable, as aforesaid, from the said ditch or trench in which it was lying, thereby obstructing her passage, and entangling her in such a manner as to throw her violently to the pavement, inflicting upon her serious, painful and permanent injuries, as hereinafter more particularly set forth.

9. That at the time when plaintiff attempted to cross the intersection of said streets, and to step over said open and unguarded ditch and cable, as aforesaid, and at the time when she received her injuries, she knew nothing of the manner in which said cable was being laid, and she was entirely ignorant of the dangerous condition and obstruction existent at the place where her injuries were inflicted.

10. That it was the duty of the defendant to exercise due care to maintain its streets and sidewalks, in a reasonably safe condition, and in allowing the existence of the obstruction and dangerous condition upon its streets and sidewalks, as above described, the defendant breached its duty in this respect which it owed to the plaintiff, and this breach of duty, together with its negligence and failure to warn the plaintiff of said obstruction and danger, and its neglect and failure to guard or barricade the aforesaid place of danger, constituted gross negligence upon the part of the defendant, which said negligence was the proximate cause of plaintiff's injury.

11. That when the plaintiff was thrown to the ground, through the negligence of the defendant, as aforesaid, her face and features were lacerated and bruised, her nose broken, the frontal sinus fractured, the knee cap dislocated, the pelvis fractured, three vertebrae dislocated or fractured, and her injury and shock were of such nature and extent as to cause her to be totally and permanently incapacitated; that prior to

her injuries plaintiff had been for a number of years in excellent health, had been able to take care of her home, and in addition to attending to the ordinary duties of housewife and mother, she had been actively engaged in religious and social undertakings in her community; that in addition to the physical injuries sustained by her, plaintiff has suffered great pain and untold mental anguish.

The defendant demurred to the amended complaint on the ground that it does not set forth facts sufficient to constitute a cause of action, because it appears on the face of the complaint that the alleged negligence occurred and resulted from an act of the defendant's employees while installing an electric cable, the purpose of which was to supply a current for a "white way" street lighting system; and while so installing said cable for the purpose of lighting its streets the defendant was exercising a governmental function solely for the benefit and protection of the public and is not, therefore, civilly liable for the negligence of its employees resulting therefrom.

Judge Sinclair overruled the demurrer and the defendant excepted and appealed.

*Finch, Rand & Finch, Cooley & Bone and Biggs & Broughton for plaintiff.*

*Spruill & Spruill, Battle & Winslow and Thorp & Thorp for defendant.*

ADAMS, J. The plaintiff alleges that the defendant in its private and corporate capacity owns and operates a plant for generating and distributing electricity for profit, not only to citizens within the corporate limits, but to persons and corporations outside the city; that for accomplishing these purposes the defendant owns and maintains also a system of wires, poles, and transformers within and without the city limits; and that a part of the electric current, not sold for profit, is used in lighting the streets.

If it be conceded for the present purpose that the lighting of its streets by the defendant is a governmental function, the distribution of electricity for a profit is a privilege exercised in its private capacity for its own benefit. As to the proprietary or private character of a municipal corporation "the theory is that the powers are supposed not to be conferred, primarily or chiefly, from considerations connected with the government of the State at large, but for the private advantage of the compact community which is incorporated as a distinct legal personality or corporate individual; and as to such powers, and to the property acquired thereunder, and contracts made with reference thereto, the corporation is to be regarded *quoad hoc* as a private corporation." 1 Dillon (5 ed.), sec. 109.

Upon the doctrine of the twofold character of municipal corporations the defendant rests its contention that if the complaint sets forth certain acts done by the defendant in its governmental capacity and other acts which are of a proprietary, private or *quasi*-private nature, the plaintiff alleges that she was injured while the city was engaged in the construction of a system for lighting its streets, which it contends, was merely the performance of a public or governmental duty.

There is substantial unanimity of opinion upon the proposition that a city when exercising its private or corporate powers is liable in damages for the negligence of its employees and, as a rule, that it is not liable for negligence in its exercise of a governmental function. 6 McQuillin's Mun. Corporations (2 ed.), sec. 2792; *Mack v. Charlotte,* 181 N. C., 383; *James v. Charlotte,* 183 N. C., 630; *Scales v. Winston-Salem,* 189 N. C., 469; *Parks-Belk Co. v. Concord,* 194 N. C., 134; *Cathey v. Charlotte,* 197 N. C., 309.

The law which imposes liability in one case and not in the other has been stated in a number of the decisions of this Court, notably *Fisher v. New Bern,* 140 N. C., 506; *Harrington v. Wadesboro,* 153 N. C., 437; *Terrell v. Washington,* 158 N. C., 282; *Woodie v. Wilkesboro,* 159 N. C., 353; *Harrington v. Greenville, ibid.,* 632; *Asbury v. Albemarle,* 162 N. C., 247; and *Munick v. Durham,* 181 N. C., 188. In some of these cases there is strong intimation, if not express decision, that according to the complaint, which the demurrer admits to be true, the city was not engaged in the exercise of such governmental function as would exempt it from liability. But the decision of this question is not essential to affirmance of the judgment. In the complaint there is clear and definite allegation that the city negligently failed to maintain its streets in a reasonably safe condition; that the cable by which the plaintiff was injured extended along the sidewalk and created a dangerous obstruction which imperiled the safety of those who had occasion to use the streets. This allegation removes the defense of a governmental function. The controlling principle is given by McQuillin: "And where the right of action is based on the failure of the municipal corporation to use ordinary care in maintaining its streets, public ways and sidewalks in a reasonably safe condition for travel in the usual modes, such negligence in a majority of the states, aside from statutory or charter provision, furnishes another exception to the principles mentioned, and hence the governmental function doctrine in such cases has no application." 6 Mun. Corporations (2 ed.), sec. 2793. "This rule," he says, "is founded upon the 'illogical exception' to the general rule of the common law disallowing actions against municipalities for negligence in the discharge of duties imposed upon them for the sole benefit of the public and from which they derive no compensation or benefit in their

corporate capacity. It is obvious that the obligation, so far as travelers are concerned, is one of a public character, fulfilled, not for pecuniary profit or private corporate advantage, but exercised as a purely governmental function. It is generally said that the liability arises by implication from the nature of the subject and the vast powers conferred upon such corporations, including the exclusive control of the streets. The additional reason is presented in some decisions, that making and improving streets and keeping them in repair is a ministerial function and relates to corporate interests only." 7 Mun. Corporations (2 ed.), sec. 2902.

Whether this doctrine is illogical is a question with which we are not concerned. This Court has consistently adhered to the principle that the liability of municipal corporations for injury caused by defective streets is "too firmly established to admit of further question." *Harrington v. Greenville, supra.* The purpose of the defendant, it will be observed, was not to construct or improve its streets and sidewalks, but to install a system of electric lights.

One other question is to be considered: The plaintiff filed her first complaint on 6 June, 1929; the defendant demurred, and Judge Daniels sustained the demurrer for the reason that the complaint had no allegation that the city was engaged in the exercise of any corporate function. This defect was supplied in the amended complaint and the defendant's demurrer thereto was overruled. The defendant now contends that the plaintiff is concluded by the judgment sustaining the first demurrer and relies upon the doctrine of estoppel by judgment.

This asserted defense does not appear on the face of the amended complaint; and when a demurrer invokes a fact which does not appear on the face of the pleading demurred to, it is called a "speaking demurrer," and as such is insufficient. *Sandlin v. Wilmington,* 185 N. C., 257. To meet this objection the defendant moved that the action be dismissed because the question raised by the demurrer had been finally determined by the judgment of Judge Daniels, and offered to read the first complaint and the first demurrer.

The motion was in legal effect a demurrer *ore tenus,* which, when a formal demurrer is filed, is permissible for stating other causes which could have been included in the formal demurrer; but such objection (except when there is a want of jurisdiction or the complaint does not state a cause of action) is considered only in its relation to the particular pleading to which the formal demurrer is addressed. *Mountain Park Institute v. Lovill,* 198 N. C., 642.

There was no error in denying the defendant's motion. The defense may be interposed by answer.

Judgment affirmed.