NEIL M. KIRKPATRICK AND CHERYL B. KIRKPATRICK, PLAINTIFFS v. TOWN OF NAGS HEAD, A NORTH CAROLINA MUNICIPAL CORPORATION, DEFENDANT

No. COA10-309

(Filed 5 July 2011)

**1. Appeal and Error— writ of certiorari—review of implicit determination by trial court**

A writ of *certiorari* was granted by the Court of Appeals to allow appellate review of any implicit determination by the trial court concerning defendant's right to rely on a governmental immunity defense.

**2. Immunity— governmental—closure of road**

The extent to which particular municipal streets and roads are kept open for use by members of the public is a governmental function and governmental immunity is available to municipalities as a defense to damage claims arising from such discretionary road closure decisions. Governmental immunity is not available as a defense to claims arising from personal injuries or property damage sustained as a result of a defective condition in the maintenance of the street or road.

**3. Immunity— governmental—waiver by insurance—road closing**

Defendant Town was entitled to rely on governmental immunity in a claim arising from the closing of a beach road following a storm and should have been granted summary judgment. Immunity was not waived by the Town's insurance policy because the policy covered occurrences resulting in damages for which the Town was liable. The storm was an act of God and thus was not conduct for which defendant was legally liable, and the decision not to repair the road was intentional with full knowledge of likely consequences, which also prevented coverage under the policy.

Appeal by defendant from order entered 7 December 2009 by Judge Walter H. Godwin in Dare County Superior Court. Heard in the Court of Appeals 13 October 2010.

*The Brough Law Firm, by T.C. Morphis, Jr., and Robert E. Hornik, Jr., for Plaintiff-Appellee.*

*Hornthal, Riley, Ellis & Maland, L.L.P., by John D. Leidy, and Benjamin M. Gallop, for Defendant-Appellant.*

ERVIN, Judge.

Defendant Town of Nags Head appeals from an order denying its motion for summary judgment predicated on governmental immunity grounds. On appeal, Defendant contends that the trial court erred by failing to conclude that it was immune from liability based upon the claims asserted against it by Plaintiffs Neil M. Kirkpatrick and Cheryl B. Kirkpatrick on governmental immunity grounds and that it had not waived governmental immunity by purchasing insurance. After careful consideration of Defendant's challenges to the trial court's order in light of the record and the applicable law, we conclude that the trial court erred by failing to enter summary judgment in favor of Defendant and that this case should be remanded to the Dare County Superior Court for the entry of judgment in favor of Defendant.

## I. Factual Background

In 1983, Plaintiffs purchased a house and lot located at 9830 East Surfside Drive in Nags Head. At that time, Plaintiffs' property was located in the second row of houses and was separated from the Atlantic Ocean by a paved right-of-way known as Surfside Drive, a row of oceanfront homes, and a dune line. Over time, the dune line,

the oceanfront homes, and the paved right-of-way were all washed away by the Atlantic Ocean.

In September 2003, Hurricane Isabel destroyed "[m]ost[,] if not all[,] of the paved surface of the Surfside Drive right-of-way in the vicinity of the Plaintiffs' property." After Hurricane Isabel, Defendant made a number of improvements in the area, including the installation of a protective berm and the creation of a gravel roadbed along the route of Surfside Drive. Both the berm and the gravel roadbed were washed away by a nor'easter in 2004.

The relevant section of Surfside Drive has not had a paved surface since September 2003, and no gravel roadbed has existed on that site since 2004. After the 2004 nor'easter, Defendant made a conscious decision to refrain from making any additional effort to rebuild, repair, or restore Surfside Drive. Furthermore, Defendant erected "permanent barricades" to prevent vehicles from traveling upon the affected portion of Surfside Drive. In the years following the 2004 nor'easter, the portion of Surfside Drive relevant to this appeal continued to erode. Although the record reflects some disagreement between the parties about the exact date upon which Surfside Drive completely disappeared into the Atlantic, the right-of-way no longer existed as of 2010.

Plaintiffs utilized the residence situated on their lot as a summer rental property.[1] Prior to its disappearance, Plaintiffs' residence was accessed by way of Surfside Drive. According to Plaintiff Neil Kirkpatrick, "[a]fter the October 23, 2004 nor'easter, [Plaintiffs] were unable to access the House by vehicle because approximately the portion of Surfside Drive running in front of the Property had been washed away completely." Plaintiff Neil Kirkpatrick further complained that Defendant "prohibited . . . driving over the open beach for nearly all of the time between the October 23, 2004 nor'easter and the present[,] . . . [and,] [b]eginning on November 16, 2004, [Defendant] formally prohibited all vehicular access in or out of the washed out portion of Surfside Drive." Even so, Plaintiffs were sometimes able to access their home by driving on the beach or by parking in a public right-of-way near the property and walking to the house and were always.able to reach their residence on foot. On 24 January 2007, Defendant informed Plaintiffs that their residence had become unsuitable for occupancy and that they could not reoccupy it until vehicular access had been restored.

---

1. Plaintiffs' residence was destroyed by, and subsequently washed into, the Atlantic Ocean in November 2009.

On 15 November 2007, Plaintiffs filed a complaint against Defendant Town of Nags Head alleging claims for inverse condemnation and negligence. In their complaint, Plaintiffs alleged that Defendant had an affirmative duty pursuant to N.C. Gen. Stat. § 160A-269(a) to keep public streets "in proper repair" and "free from unnecessary obstructions." According to Plaintiffs, Defendant negligently failed to comply with this obligation by refraining from taking any action to maintain Surfside Drive after the 2004 nor'easter "washed out the improved road surface . . . completely." In Plaintiffs' view, Defendant's negligence caused Plaintiffs to sustain "substantial costs, damage and harm." More specifically, Plaintiffs alleged that Defendant's conduct resulted in:

> lost rental revenue in 2005, 2006 and 2007; . . . caused [Plaintiffs] to make significant expenditures trying to establish alternate access to the Property; . . . forced [Plaintiffs] to expend significant sums placing sandbags seaward of [their property] to protect it from erosion; and . . . forced [Plaintiffs] to undertake other expensive repairs.

In response to an interrogatory asking Plaintiffs to "[i]dentify as an 'Act' each instance that [they] suffered damage due to any act or failure to act on the part of the Defendant," Plaintiffs stated that:

> . . . The Plaintiffs were unable to rent out the Kirkpatrick Property in 2005, 2006, 2007 and 2008 because of a lack of access to the structure. Also, the Plaintiffs continue to pay taxes on the property, but effectively receive no services because there is no vehicle access to the Kirkpatrick Property[.]

> Moreover, Plaintiff Neil Kirkpatrick has spent thousands of dollars installing sandbags to protect the Kirkpatrick Property. . . These bags are located just seaward of the house. Had the Town timely closed the Southern Portion of Surfside Drive, however, by State law the Plaintiffs would have taken title to part of the land underneath the right-of-way and could have placed the sandbags further from the house, thereby providing better protection to the house.

> Also, the Plaintiffs have spent considerable sums repairing their house due [to] the effects of erosion and storms. . . . At this time, Plaintiffs have not determined specifically which repairs were necessitated or exacerbated by the inaction of the Town.

Finally, the Plaintiffs have expended numerous hours working with neighboring property owners to establish a private access-way for the Kirkpatrick Property. Had the Town closed the Southern Portion of Surfside Drive, however, the Town would have then been obligated to either purchase or condemn an alternate accessway for the Kirkpatrick Property.

After an initial period of discovery, Plaintiffs filed a motion for partial summary judgment and Defendant filed a motion for summary judgment. The parties' motions were heard on 6 April 2009 before Judge Jerry R. Tillet. On 20 May 2009, Judge Tillet entered an order denying Plaintiffs' motion in its entirety, granting summary judgment in favor of Defendant with respect to Plaintiffs' inverse condemnation claim, and denying the remainder of Defendant's motion, which related to Plaintiffs' negligence claim, without prejudice "until it may be determined if defendant has waived its immunity by the purchase of liability insurance actually providing coverage for such claim."

After additional discovery, Defendant's renewed motion for summary judgment was heard before the trial court at the 16 November 2009 civil session of the Dare County Superior Court. On 7 December 2009, the trial court entered an order denying Defendant's motion, stating, in pertinent part, that:

. . . . Upon consideration of the arguments of counsel, written briefs, pleadings, and the discovery materials, affidavits and other materials submitted to the Court pursuant to N.C.R. Civ. Pro. 56, the Court finds that a genuine issue of material fact exists with regard to whether defendant has waived its immunity by the purchase of insurance providing liability coverage applicable to Plaintiffs' claim of negligence and that Defendant is not entitled to judgment as a matter of law on Plaintiffs' claim of negligence.

Defendant noted an appeal to this Court from the trial court's order.

## II. Legal Analysis

### A. Standard of Review

The entry of summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. Gen. Stat. § 1A-1, Rule 56(c); *see also Johnson v. Beverly Hanks & Assoc.*, 328 N.C. 202, 207, 400 S.E.2d 38, 41 (1991)

(stating that "[i]t is well settled that a party moving for summary judgment is entitled to such judgment if the party can show, through pleadings, depositions, and affidavits, that there is no genuine issue of material fact requiring a trial and that the party is entitled to judgment as a matter of law") (citations omitted). "The party who moves for summary judgment has the initial burden to prove that there are no disputed factual issues[;]" however, "[o]nce the moving party has met this initial burden, the nonmoving party must produce a forecast of evidence demonstrating that he or she will be able to make out a prima facie case at trial." *Johnson*, 328 N.C. at 207, 400 S.E.2d at 41 (citations omitted).

We review a trial court order granting or denying a summary judgment motion on a *de novo* basis, with our examination of the trial court's order focused on "determin[ing] whether there is a 'genuine issue of material fact' and whether either party is 'entitled to judgment as a matter of law.' " *Stone v. State*, 191 N.C. App. 402, 407, 664 S.E.2d 32, 36 (2008) (quoting *Robins v. Town of Hillsborough*, 361 N.C. 193, 196, 639 S.E.2d 421, 423 (2007)), *disc. review denied and app. dismissed*, 363 N.C. 381, 680 S.E.2d 712 (2009). As part of that process, we view the evidence " 'in the light most favorable to the nonmoving party.' " *Brown v. City of Winston-Salem*, 171 N.C. App. 266, 270, 614 S.E.2d 599, 602 (quoting *Moore v. Coachmen Industries*, 129 N.C. App. 389, 394, 499 S.E.2d 772, 775 (1998)), *cert. denied*, 360 N.C. 60 (2005). We will now utilize this standard in reviewing the trial court's decision to deny Defendant's summary judgment motion. As a result of the fact that the parties have not identified any disputed issue of fact, the operative question before us in this case is whether Defendant was or was not entitled to the entry of summary judgment as a matter of law on governmental immunity grounds.

### B. Substantive Legal Issues

#### 1. Reviewability of Judge Tillett's Order

[1] The first issue that we must address is the extent, if any, to which any determination made in Judge Tillett's order concerning the availability of governmental immunity to Defendant as a general proposition is properly before this Court in connection with Defendant's appeal from the trial court's order. Although both parties appear to agree that Judge Tillett's order reflects an implicit determination that Defendant is entitled, at least in the abstract, to rely on a defense of governmental immunity in response to Plaintiffs' claim, they differ over the extent to which we are entitled to revisit that determination

in the course of deciding Defendant's appeal. On the one hand, Defendant contends that, since Plaintiffs never noted an appeal to this Court from Judge Tillett's order despite the fact that they had the right to do so at either the time Judge Tillett's order was initially entered or later, any implicit determination that Judge Tillett might have made concerning the availability of a governmental immunity defense to Defendant has become the law of the case and is binding on both the parties and this Court. On the other hand, Plaintiffs argue that their challenge to Judge Tillett's implicit determination is properly before this Court as an alternate ground for sustaining the trial court's order as authorized by N.C.R. App. P. 10(c) and N.C.R. App. P. 28(c). Although the mere fact that a party elected not to appeal an interlocutory order does not preclude that party from challenging the decision embodied in that interlocutory order at a later time, *Stanford v. Paris*, 364 N.C. 306, 312, 698 S.E.2d 37, 41 (2010) (holding that the "plaintiffs did not forfeit their right to appeal by not taking an immediate appeal of the interlocutory [] order"), and although the "law of the case" doctrine does not limit an appellate court's right to revisit an interlocutory order which has not been reviewed on appeal or otherwise become final, *N.C.N.B. v. Virginia Carolina Builders*, 307 N.C. 563, 566, 299 S.E.2d 629, 631 (1983) (stating that, "[o]nce an appellate court has ruled on a question, that decision becomes the law of the case and governs the question not only on remand at trial, but on a subsequent appeal of the same case" and that, "[a]t the trial level '[t]he well established rule in North Carolina is that no appeal lies from one Superior Court judge to another' " and that, " 'ordinarily[,] one judge may not modify, overrule, or change the judgment of another Superior Court judge previously made in the same action' ") (citing *Tennessee-Carolina Transportation, Inc. v. Strick Corp.*, 286 N.C. 235, 239, 210 S.E.2d 181, 183 (1974); *Horton v. Redevlopment Commission of High Point*, 266 N.C. 725, 726, 147 S.E.2d 241, 243 (1966); *Bass v. Mooresville Mills*, 15 N.C. App. 206, 207-08, 189 S.E.2d 581, 582, *cert. denied*, 281 N.C. 755, 191 S.E.2d 353 (1972); and quoting *Calloway v. Ford Motor Co.*, 281 N.C. 496, 501, 189 S.E.2d 484, 488 (1972)), we need not definitively determine whether either principle governs this case. Although we are inclined to believe that Plaintiffs' argument that they are entitled to challenge any implicit determination embodied in Judge Tillett's order to the effect that a governmental immunity defense is generally available to Defendant in this case as an alternative basis for upholding the trial court's order authorized by N.C.R. App. P. 10(c) and N.C.R. App. P. 28(c) and to overlook their failure to list their challenge to Judge Tillett's implicit determination

in the list of issues authorized by N.C.R. App. P. 10(c) utilizing our authority under N.C.R. App. P. 2 to the extent that it is necessary to do so, we need not make a final decision concerning the validity of Plaintiffs' argument given our decision to issue a writ of *certiorari* pursuant to N.C.R. App. P. 21(a)(1) so as to allow us to review any implicit determination that may have been made in the Tillett order concerning Defendant's right to rely on a governmental· immunity defense as a general proposition. *Anderson v. Hollifield*, 345 N.C. 480, 482, 480 S.E.2d 661, 663 (1997) (stating that "we conclude that Rule 21(a)(1) gives an appellate court the authority to review the merits of an appeal by certiorari even if the party has failed to file notice of appeal in a timely manner"). Any other result will have the inequitable effect of allowing Defendant to seek and potentially obtain a decision from this Court holding that ·it did not waive the defense of governmental immunity by purchasing insurance without affording Plaintiffs an opportunity, to which they are entitled at some stage in this litigation, to challenge Defendant's right to rely on governmental immunity as a general proposition. As a result, the fundamental question that we must resolve on appeal is the extent to which Defendant was entitled to rely on a governmental immunity defense in response to Plaintiffs' claims and, if so, whether Defendant waived any otherwise available governmental immunity defense by purchasing insurance.

## 2. General Availability of Governmental Immunity Defense

**[2]** The functions performed by a municipality, such as Defendant, are subject to classification as either proprietary or governmental in nature. *Britt v. Wilmington*, 236 N.C. 446, 450-51, 73 S.E.2d 289, 293 (1952); *Sisk v. City of Greensboro*, 183 N.C. App. 657, 659, 645 S.E.2d 176, 179, (stating that "[a]cts of municipalities can be divided into two categories: (1) governmental functions, that is, discretionary, political, legislative, or those public in nature performed for the public good; and (2) proprietary functions, that is, activities which are commercial or chiefly for the private advantage of the compact community") (citing *Evans v. Housing Auth. of City of Raleigh*, 359 N.C. 50, 54, 602 S.E.2d 668, 671 (2004), *disc. review denied*, 361 N.C. 569, 650 S.E.2d 813 (2007)). Governmental immunity shields municipalities from liability only when the "activity complained of is governmental[.]" *Sisk*, 183 N.C. App. at 659, 645 S.E.2d at 179 (citing *Evans*, 359 N.C. at 54, 602 S.E.2d at 671); *see also Jones v. City of Durham*, 183 N.C. App. 57, 64, 643 S.E.2d 631, 636 (2007). As a result, the initial question we must address in evaluating the validity of Defendant's govern-

mental immunity defense is whether the harm of which Plaintiffs complain resulted from the performance of a proprietary or a governmental function.

According to N.C. Gen. Stat. § 160A-296(a), municipalities have a duty to, among various other things, "keep the public streets, sidewalks, alleys, and bridges open for travel and free from unnecessary obstructions." Although the "[m]aintenance of [] public road[s and] highway[s] is generally considered a governmental function[, an] 'exception is made in respect to streets and sidewalks of a municipality.' " *Sisk*, 183 N.C. App. at 659, 645 S.E.2d at 179 (quoting *Millar v. Wilson*, 222 N.C. 340, 342, 23 S.E.2d 42, 44 (1942)). This exception to the general rule that street and road maintenance is a governmental function, which was initially created in a judicial decision and later codified in N.C. Gen. Stat. § 160A-296(a), "has been recognized and uniformly applied in this jurisdiction [so that] the maintenance of streets and sidewalks is [properly classified] as a ministerial or proprietary function." *Millar*, 222 N.C. at 342, 23 S.E.2d at 44 (citing *Sandlin v. Wilmington*, 185 N.C. 257, 116 S.E. 733 (1923); *Graham v. Charlotte*, 186 N.C. 649, 120 S.E. 466 (1923); *Willis v. New Bern*, 191 N.C. 507, 132 S.E. 286 (1926); *Michaux v. Rocky Mount*, 193 N.C. 550, 137 S.E. 663 (1927); *Hamilton v. Rocky Mount*, 199 N.C. 504, 154 S.E. 844 (1930); and *Speas v. Greensboro*, 204 N.C. 239, 167 S.E. 807 (1933)).

> The duty, as thus recognized, is positive. While the municipal authorities have discretion in selecting the means by which the traveling public is to be protected against a dangerous defect in the street, provided the means selected are adequate, there is no discretion as to the performance or nonperformance of the duty itself.

*Id.* Thus, a municipality has an obligation to protect individuals from injury resulting from defective street and roadway conditions without being allowed to avoid liability for negligently performing its street and road maintenance obligations by relying on a governmental immunity defense while retaining discretion over the manner in which streets and roads are actually maintained.

A review of the reported decisions of this Court and the Supreme Court reveals that no appellate court in this State has ever held that governmental immunity was not available in a civil action arising from municipal street maintenance issues outside the context of personal injury or property damage arising from an accident within or

near the right-of-way and clearly attributable to an unsafe condition existing in the street or road in question. *Id.* at 343, 23 S.E.2d at 44-45 (holding that a municipality was not protected by governmental immunity from liability arising from a motor vehicle collision occurring on the roadway and related to the replacement of a protective traffic light by city-employee); *Willis*, 191 N.C. at 510-13, 132 S.E. at 289-90 (holding that a municipality was not protected by governmental immunity in a case in which a driver was killed after he drove off roadway and into deep water at a location where the municipality had failed to erect a barrier, rail, guard, light, or any device giving notice that the street terminated and that deep water lay beyond the end of the road); *McDonald v. Village of Pinehurst*, 91 N.C. App. 633, 634-35, 372 S.E.2d 733, 734 (1988) (holding that a municipality was not protected from liability on governmental immunity grounds in a case in which a motorist was injured as a result of the municipality's failure to keep the streets free of visual obstructions). Plaintiffs have not asserted any claims resembling those that have been held not to be subject to a governmental immunity defense in our reported decisions. Instead, Plaintiffs assert that they are entitled to recover damages resulting from various forms of economic injury that they attribute to Defendant's failure to reconstruct Surfside Drive after the 2004 nor'easter and its decision to barricade the route formerly traversed by Surfside Drive in the affected area. If we were to accept Plaintiffs' contentions and hold Defendant liable to Plaintiffs for economic injuries resulting from the making of such decisions, we would effectively be depriving a municipality, such as Defendant, of its discretion to determine the identity of the streets upon which travel should be allowed at all. Put another way, accepting Plaintiffs' argument would effectively require a municipality to compensate a landowner or other person adversely affected by a street or roadway closure decision for economic losses arising from the closure of the road in question. We do not believe that either the Supreme Court or the General Assembly intended such a result at the time that they initially established and later codified the exception to the general rule that street and road maintenance is a governmental function entitled to governmental immunity protection applicable to municipal thoroughfares. Given these factors and the well-established policy providing for the availability of governmental immunity in the absence of a clear statutory mandate to the contrary, *Hodges v. Charlotte*, 214 N.C 737, 742, 200 S.E. 889, 892 (1939) (Barnhill, J., concurring) (stating that, "[t]he exception to the prevailing doctrine[,] . . . which imposes liability upon a city or town for damages resulting from the failure to

exercise ordinary care in keeping its streets and sidewalks in a reasonably safe condition for the purposes for which they are intended[,] was created by judicial decision [and w]e should be careful not to enlarge or extend this exception without legislative sanction"), we conclude that the extent to which particular municipal streets and roads are kept open for use by members of the public, such as Plaintiffs, is a governmental function and that governmental immunity is available to municipalities as a defense to damage claims arising from such discretionary road closure decisions.

As a result, we hold that municipalities may exercise their discretion, while remaining subject to protection from liability by the doctrine of governmental immunity, in deciding which roads to keep open for vehicular traffic and which roads should not continue to be open for such travel. However, in the event that the municipality decides to allow travel on a particular street or road, governmental immunity is not available as a defense to any claim arising from personal injuries or property damage sustained as a result of a defective condition in the maintenance of that street or road. As a result of the fact that Plaintiffs have not alleged or forecast evidence tending to show the existence of any specific defect in Surfside Drive that caused the injuries of which they complain other than Defendant's decision to refrain from conducting further maintenance on Surfside Drive and to close Surfside Drive to vehicular traffic in the area adjacent to Plaintiffs' property, we conclude that Judge Tillett and the trial court correctly concluded that governmental immunity was, as a general proposition, available to Defendant as a defense to Plaintiffs' claim and that the ultimate issue that we must resolve in order to decide this case is the extent, if any, to which the trial court correctly determined that Defendant was not entitled to summary judgment on governmental immunity grounds because of issues arising from its purchase of a general liability insurance policy.

### 3. Waiver of Governmental Immunity

[3] According to N.C. Gen. Stat. § 160A-485:

> Any city is authorized to waive its immunity from civil liability in tort by the act of purchasing liability insurance. Participation in a local government risk pool pursuant to Article 23 of General Statute Chapter 58 shall be deemed to be the purchase of insurance for the purposes of this section. Immunity shall be waived only to the extent that the city is indemnified by the insurance contract from tort liability. No formal action other

**KIRKPATRICK v. TOWN OF NAGS HEAD**

[213 N.C. App. 132 (2011)]

than the purchase of liability insurance shall be required to waive tort immunity, and no city shall be deemed to have waived its tort immunity by any action other than the purchase of liability insurance.

As a result, the critical question that we must address in order to determine whether Defendant waived the defense of governmental immunity in connection with Plaintiffs' claim is whether any relevant insurance policies would have covered their claim.

An insurance policy is, at bottom, a contract. For that reason, an insurance policy should be construed in accordance with the intentions of the parties. *Gaston County Dyeing Machine Co. v. Northfield Ins. Co.*, 351 N.C. 293, 299-300, 524 S.E.2d 558, 563 (2000).

> As with all contracts, the goal of construction is to arrive at the intent of the parties when the policy was issued. Where a policy defines a term, that definition is to be used. If no definition is given, non-technical words are to be given their meaning in ordinary speech, unless the context clearly indicates another meaning was intended. The various terms of the policy are to be harmoniously construed, and if possible, every word and every provision is to be given effect. If, however, the meaning of words or the effect of provisions is uncertain or capable of several reasonable interpretations, the doubts will be resolved against the insurance company and in favor of the policyholder. Whereas, if the meaning of the policy is clear and only one reasonable interpretation exists, the courts must enforce the contract as written; they may not, under the guise of construing an ambiguous term, rewrite the . contract or impose liabilities on the parties not bargained for and found therein.

*Id.* (citation omitted). We will now utilize these well-established rules of contract and insurance policy construction to construe any insurance policies that might have provided coverage to Defendant relating to Plaintiffs' claim.

According to the information contained in the record, Defendant has purchased two different types of insurance coverage Employment Practices Liability Coverage (EPL) and Commercial General Liability Coverage (CGL). However, given the parties' agreement that the EPL policy has no application to the present dispute, we need not examine that policy. The same is not true, however, of the CGL pol-

icy, given that Plaintiffs base their claim that Defendant has waived governmental immunity with respect to their claims upon the language of that policy.

The CGL policy provides, among other things, that:

### SECTION I—COVERAGES

### COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1.  Insuring Agreement

    a.  We will pay those sums that the insured becomes legally obligated to pay as compensatory damages because of "bodily injury" or "property damage" to which this insurance applies[.]

        . . . .

    b.  This insurance applies to "bodily injury" and "property damage" only if:

        (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory[.]"

            . . . .

### SECTION V—DEFINITIONS

. . . .

15. **"Occurrence"** means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

According to the relevant policy language, coverage under the CGL policy is triggered by the existence of a "bodily injury" or "property damage" stemming from an "occurrence" for which the policy holder is "legally obligated to pay." Thus, if Plaintiffs' claim does not involve "bodily injury" or "property damage," if any "bodily injury" or "property damage" implicated by Plaintiffs' claim does not stem from an "occurrence," or if Defendant is not legally obligated to pay for the resulting "bodily injury" or "property damage," then Defendant has no coverage under the CGL policy applicable to Plaintiffs' claim and has not waived the right to rely on a governmental immunity defense.

## KIRKPATRICK v. TOWN OF NAGS HEAD

[213 N.C. App. 132 (2011)]

As a result of the fact that an "occurrence" is a specifically defined term, we must resolve the issue before us utilizing the definition set out in the CGL policy. However, since "accident" as used in the definition of an "occurrence" is not a defined term, we must give that word its ordinary meaning. An accident "is generally considered to be an unplanned and unforeseen happening or event, usually with unfortunate consequences." *Id.* at 302, 524 S.E.2d at 564 (citing *Merriam-Webster's Collegiate Dictionary* 7 (10th ed. 1993), and *Black's Law Dictionary* 15 (7th ed. 1999)). For example, a "sudden, unexpected leakage from [a] pressure vessel, causing release of a contaminant . . . comes within the ordinary meaning of the term 'accident.' " *Id.*

In their brief, Plaintiffs treat the 2004 nor'easter as the "occurrence" that serves to render coverage under the CGL policy available to Defendant. The 2004 nor'easter clearly amounted to "an unplanned or unforeseen happening or event," thus we have no difficulty in concluding that the 2004 nor'easter constituted an "occurrence" as that term is used in the CGL policy. The fact that the 2004 nor'easter is an "occurrence" for purposes of the CGL policy is not, however, dispositive of the coverage issue. Instead, as we have already noted, Section I(1)(a) of the CGL policy obligates the carrier to pay "those sums that the insured becomes legally obligated to pay as compensatory damages because of 'bodily injury' or 'property damage' to which this insurance applies." Thus, we must necessarily address the extent, if any, to which the "occurrence" must be an event that gives rise to legal liability on behalf of Defendant.

On appeal, Plaintiffs argue that there is nothing in the relevant policy language that requires that the "occurrence" be something for which Defendant is legally liable. According to Plaintiffs, such logic "confuses proving the elements of negligence with proving the existence of insurance coverage." We are not, however, persuaded by this argument. Although Plaintiffs correctly state that "[n]othing in the CGL Form requires the occurrence to be an act or omission of [Defendant]," the relevant policy language makes it abundantly clear that any "occurrence" must constitute an act or omission that results in damages Defendant is "legally obligated to pay." Thus, if Defendant is not liable to Plaintiffs for damages caused by the "occurrence" upon which Plaintiffs rely, no coverage is available to Defendant under the CGL policy.

The 2004 nor'easter was undoubtedly an "Act of God," as that term has been defined by the Supreme Court. According to the Supreme Court:

[An Act of God is] [a]n act occasioned exclusively by violence of nature without the interference of any human agency. It means a natural necessity proceeding from physical causes alone without the intervention of man. It is an act, event, happening, or occurrence, due to natural causes and inevitable accident, or disaster; a natural and inevitable necessity which implies entire exclusion of all human agency which operates without interference or aid from man and which results from natural causes and is in no sense attributable to human agency. It is an accident which could not have been occasioned by human agency but proceeded from physical causes alone.

*Lea Co. v. N.C. Board of Transportation*, 308 N.C. 603, 615-16, 304 S.E.2d 164, 173-74 (1983) (quoting *Black's Law Dictionary* 31 (5th rev. ed. 1979)). According to well-established North Carolina law, " 'a person is not liable for injuries or damages caused by an act which falls within the meaning of the term "act of God[.]" ' " *Insurance v. Storage Co.*, 267 N.C. 679, 687, 149 S.E.2d 27, 34 (1966) (quoting 1 Am. Jur. 2d, *Act of God* § 11). However, " 'one may be held liable for his own negligence even though it concurs with an act of God.' " *Id.* (quoting 1 Am. Jur. 2d, *Act of God* § 11).

Although Plaintiffs do not appear to deny that the 2004 nor'easter constituted an "Act of God," they seem to contend that their injuries stemmed from negligence on the part of Defendant which concurred with the "Act of God." We do not, however, believe that acceptance of this argument would affect the outcome. Coverage under the CGL policy is only available in the event that the "occurrence" constituted actionable conduct by Defendant, which is simply not the case in this instance. For that reason, even if Plaintiffs' injuries resulted from any negligent conduct on the part of Defendant that concurred with the 2004 nor'easter, the fact that the "occurrence" and the conduct giving rise to Defendant's liability were not one and the same event is determinative for coverage purposes. Thus, given that the "occurrence" upon which Plaintiffs rely did not involve any conduct for which Defendant is legally liable and given that such a connection between the "occurrence" and the claimant's injuries is necessary in order for there to be coverage under the CGL policy, Defendant did not waive governmental immunity by purchasing that policy.

Alternatively, Plaintiffs contend that Defendant's "act of not repairing Surfside Drive also constitutes an 'occurrence.' " In this facet of their argument, Plaintiffs are attempting to establish that

**KIRKPATRICK v. TOWN OF NAGS HEAD**

[213 N.C. App. 132 (2011)]

Defendant's own allegedly negligent acts constitute the necessary "occurrence." However, even under Plaintiffs' definition of an "occurrence" as any intentional act not "(1) intended to cause injury or damage, or (2) substantially certain to cause injury or damage[,]" *Henderson v. U.S. Fidelity & Guaranty Co.*, 124 N.C. App. 103, 110, 476 S.E.2d 459, 463-64 (1996), *aff'd*, 346 N.C. 741, 488 S.E.2d 234 (1997), Defendant's failure to repair Surfside Drive does not constitute an "occurrence." The undisputed evidence contained in the present record establishes that Defendant made a conscious, intentional decision not to repair or rebuild Surfside Drive after the 2004 nor'easter and to obstruct the ability of vehicular traffic to travel on that street. By all accounts, Defendant acted with full knowledge of the likely consequences of its actions. At the time that the decision was made to refrain from repairing Surfside Drive, "[t]he statements made by [Defendant's] own officials during public meetings demonstrate that [Defendant] . . . [knew] of the defects or absence of roadbed in the Southern Portion of Surfside Drive[.]" In addition, Plaintiffs assert that, as early as "November, 2004 [they] verbally requested that the Southern Portion of Surfside Drive Roadbed be repaired, but the Town declined to do so." Finally, the record reveals that Defendant's officials engaged in an ongoing debate with each other and with members of the public about the appropriate course of action to take with respect to conditions on and around Surfside Drive after the 2004 nor'easter. As a result, there is no basis for any conclusion other than that Defendant acted intentionally and with full knowledge of the potential consequences at the time that it decided to refrain from repairing Surfside Drive, a determination that prevents Defendant's conduct from constituting the "occurrence" necessary to support a finding of coverage under the CGL policy. Since the CGL policy did not provide Defendant with coverage for claims such as those advanced by Plaintiffs, the trial court erred by implicitly finding that there was a genuine issue of material fact as to whether Defendant had waived governmental immunity by purchasing insurance.

## III. Conclusion

Thus, we conclude that there is no genuine issue of material fact concerning the extent to which Defendant is entitled to rely on a defense of governmental immunity in opposition to Plaintiffs' claim, that Defendant is entitled to judgment as a matter of law with respect to that defense, and that the trial court erred by reaching a contrary conclusion. As a result, the trial court's order should be, and hereby

is, reversed and this case should be, and hereby is, remanded to the Dare County Superior Court with instructions that judgment be entered in favor of Defendant.

REVERSED AND REMANDED.

Judges BRYANT and STEELMAN concur.