**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

─────────────

**No. 09-1207**

─────────────

CHRISTIE ARRINGTON, Administrator of the Estate of Nyles
Arrington; CHRISTIE ARRINGTON, Individually,

     Plaintiffs - Appellees,

   v.

CITY OF RALEIGH; MICHELLE PEELE, individually, in her
official capacity as an officer of the Raleigh Police
Department, and in her capacity as a security guard with La
Rosa Linda's Mexican Restaurant,

     Defendants – Appellants,

   and

RALEIGH POLICE DEPARTMENT; ROSALINDA MARTINEZ,

     Defendants.

─────────────

Appeal from the United States District Court for the Eastern
District of North Carolina, at Raleigh.  Terrence W. Boyle,
District Judge.  (5:07-cv-00011-BO)

─────────────

Argued: January 28, 2010    Decided: March 5, 2010

─────────────

Before WILKINSON, NIEMEYER, and DAVIS, Circuit Judges.

─────────────

Vacated and remanded with instructions by unpublished per curiam
opinion.

─────────────

**ARGUED:** Norwood P. Blanchard, III, CRANFILL, SUMNER & HARTZOG LLP, Wilmington, North Carolina; Hunt Kang Choi, OFFICE OF THE CITY ATTORNEY, Raleigh, North Carolina, for Appellants. Mark Anthony Key, Lillington, North Carolina, for Appellees. **ON BRIEF:** Dorothy K. Leapley, OFFICE OF THE CITY ATTORNEY, Raleigh, North Carolina, for Appellant City of Raleigh; Patricia L. Holland, CRANFILL, SUMNER & HARTZOG LLP, Raleigh, North Carolina, for Appellant Michelle Peele.

————————

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

This case arises from the fatal shooting of a man by a Raleigh, N.C., police officer. Plaintiff Christie Arrington, acting in her individual capacity and as administrator of the estate of Nyles Arrington, filed a complaint seeking damages in North Carolina state court, asserting claims under both 42 U.S.C. § 1983 and state law. Defendants removed the case to the United States District Court for the Eastern District of North Carolina on the basis of federal question jurisdiction; all of the parties are citizens of North Carolina. Thirteen days after the removal of the case to federal court, the plaintiff amended her complaint as of right, dismissing all the federal claims. The plaintiff never sought remand to state court; consequently, the case proceeded in federal district court. The case has come to us upon an interlocutory appeal on complex issues of immunity under North Carolina law. Having had the benefit of full briefing and oral argument, we conclude that the district court should have remanded the case to state court upon the dismissal of all federal claims, even in the absence of a motion from the parties that it do so. Accordingly, we vacate the interlocutory order brought up for review and remand this action with directions that the district court remand the case to state court for all further proceedings.

We draw the below summary of the facts from the record before the district court. On August 28, 2005, Officer Michelle Peele ("Peele") fatally shot Nyles Arrington ("Arrington") as he was attempting to steal her personally-owned vehicle from the parking lot of La Rosa Linda's, a Raleigh restaurant and bar. At the time of the shooting, Officer Peele was a sworn police officer of the Raleigh Police Department ("RPD") working as an off-duty security guard at La Rosa Linda's. The City of Raleigh ("the City") had passed an ordinance requiring nightclubs to hire off-duty uniformed officers to provide security. When RPD officers worked off-duty security jobs at local establishments, they were required to wear their RPD uniforms and carry their service weapons.

On the night of the shooting, Officer Peele was scheduled to work a four-hour shift providing security at La Rosa Linda's from 10 p.m. to 2 a.m. Officer Peele's friend, Lindsay Banning ("Banning"), accompanied Officer Peele that night, riding with her in Peele's personal automobile (an SUV) to the restaurant. As the night progressed, Officer Peele occasionally sat, with Banning, in her vehicle, which was positioned in the parking lot so that Peele could watch the front entrance of the restaurant. Around midnight, Officer Peele went into the foyer area of La Rosa Linda's and Banning followed

her, leaving the SUV in the parking lot with the windows down and the keys in the ignition.

Shortly after entering the restaurant, Officer Peele looked outside and noticed a man (subsequently identified as Arrington) slowly walking past the driver's side door, opening the door of her vehicle, and climbing into the driver's seat. Officer Peele had never seen Arrington before. She testified during discovery that she was particularly concerned about the theft of her vehicle because she had left her personal handgun on the floor of the driver's side of the SUV under the front seat. Officer Peele stepped out of the restaurant and approached the vehicle, shouting "Stop . . . Police . . . Get out!" but Arrington did not step out of the vehicle. Instead, he revved the engine and began driving the car slowly forward. Officer Peele continued calling for him to stop and drew her service weapon. As the vehicle moved forward, Arrington made a hard right. Banning, who had followed Officer Peele outside, was now either in or close to the path of the moving vehicle. The parties vigorously dispute Banning's precise location. Officer Peele discharged her weapon one time, fatally striking Arrington in the chest.

Plaintiff Christie Arrington filed this action in Wake County Superior Court on September 11, 2006, against the City; Officer Peele, individually and in her official capacity; the

5

RPD; and Rosalinda Martinez, the owner of the restaurant. The six-count complaint included five state law counts and one federal law count (containing numerous legal theories) pursuant to 42 U.S.C. § 1983. On January 9, 2007, the defendants timely removed the case based on federal question removal jurisdiction to the United States District Court for the Eastern District of North Carolina. Thirteen days later, the plaintiff filed an amended complaint, as of right, dismissing her federal claims and adding an additional state law claim for punitive damages. The plaintiff never sought remand to state court, and, exercising supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a), the district court proceeded with the case.

At the time of the shooting, the Raleigh City Council had authorized a limited waiver of the City's sovereign immunity for specified types of damages up to $1 million, provided the claimant agreed to execute a release in favor of all persons, firms, and corporations that might also or otherwise be liable. The City also had in place two insurance polices: one issued by Genesis Insurance Company providing indemnity for certain claims above $1 million and below $2 million, and another issued by The Insurance Company of the State of Pennsylvania, providing indemnity for certain claims above $2 million and below $11 million. The plaintiff refused to agree to execute the release as provided under state and local law.

After several preliminary matters had been resolved by the district court, on July 14, 2008, the City and Officer Peele filed motions for summary judgment, inter alia, on the ground of immunity from suit based on certain principles of state law. After a hearing, the district court entered its memorandum and order granting summary judgment in favor of the City on the merits of some claims but it rejected, either as a matter of law, or on the basis of the existence of genuine disputes of material fact, both the City's motion and Officer Peele's motion insofar as they asserted immunity from suit. The City and Officer Peele have timely noted the instant interlocutory appeal, seeking review of the district court's immunity rulings. Under Bailey v. Kennedy, 349 F.3d 731, 738-39 (4th Cir. 2003), and Gray-Hopkins v. Prince George's County, 309 F.3d 224, 231 (4th Cir. 2002), we have jurisdiction over this interlocutory appeal based on the denial of state law immunity.

II.

The plaintiff voluntarily dismissed her federal claims a mere thirteen days after the case was removed from state court but she did not move for remand. Thus, the district court elected to retain jurisdiction over the state law claims being

7

pursued by plaintiff.[1] No doubt, as permitted by 28 U.S.C. § 1367(c), the district court had the discretion to make that election. But both the plain text of § 1367(c) as well as our precedents make clear that in this instance, that discretion should have been exercised to decline jurisdiction.

Section 1367(c) provides:

> The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if--
> (1) the claim raises a novel or complex issue of State law,
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c). As can be seen, under subsections (c)(1), (2), and (3), above, there were compelling reasons not to retain supplemental jurisdiction over the non-diverse state law claims in this case. As contemplated by subsection (1), the state law immunity issues here are both novel and complex.[2] As contemplated

---

[1] District courts have supplemental jurisdiction over state law claims that "form part of the same case or controversy" as the federal claim supporting removal. 28 U.S.C. § 1367(a).

[2] The briefing and argument in this case have shown that issues surrounding municipal sovereign immunity and public official immunity pose intricate and important state law issues under North Carolina law. A decision or ruling in this case could well bring waves of consequences to other North Carolina municipalities and governmental entities. The district court, in
(Continued)

8

by subsection (2), virtually from the start, there has existed solely state law claims in this case. And relatedly, as contemplated by subsection (3), the sole federal claim supporting the district court's original jurisdiction was dismissed voluntarily by the plaintiff without objection by defendants less than two weeks after the case arrived in federal court. Under the circumstances, therefore, we fail to see why a federal district court would elect to retain jurisdiction.

Indeed, our precedents evince a strong preference that state law issues be left to state courts in the absence of diversity or federal question jurisdiction under circumstances

_____

finding that the City had waived sovereign immunity through its purchase of two insurance policies seemingly never considered, and — at a minimum – did not discuss in its order, pertinent North Carolina cases speaking directly to the issue. See, e.g., Magana v. Charlotte-Mecklenburg Bd. of Ed., 183 N.C. App. 146 (2007); Williams v. Holsclaw, 128 N.C. App. 205 aff'd, 349 N.C. 225 (1998); Overcash v. Statesville Bd. of Ed., 83 N.C. App. 21 (1986). Furthermore, while the district court concluded that the City waived sovereign immunity through the mere purchase of liability insurance, some North Carolina courts have consistently rejected that notion. See, e.g., Kephard by Tutweiler v. Pendergraph, 131 N.C. App. 559 (1998). Similarly, North Carolina's doctrine of public officer immunity includes variants that heighten its complexity. See Jones v. Kearns, 120 N.C. App. 301, 305 (1995); Slade v. Vernon, 110 N.C. App. 422, 428 (1993). Certainly, we do not suggest, by emphasizing such complexities in state law, that we harbor doubt as to the ability of any district court in this circuit to resolve them in a proper case. We have grave doubt, however, that this is a "proper case" in which a federal district court should undertake the task.

such as those reflected here. That is to say, although we have consistently acknowledged that district courts "enjoy wide latitude in determining whether or not to retain jurisdiction over state claims when all federal claims have been extinguished," Shanaghan v. Cahill, 58 F.3d 106, 110 (4th Cir. 1995), at the same time, we have taken heed of the Supreme Court's teaching (even before the enactment of § 1367 in 1990) that "a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise jurisdiction over a case brought in that court involving pendent state-law claims." Carnegie-Mellon University v. Cohill, 484 U.S. 343, 350 (1988) (emphasis added). Thus, we have observed under circumstances analogous to those here: "With all its federal questions gone, there may be the authority to keep [this case] in federal court under 28 U.S.C. §§ 1367(a) and 1441(c) (2000), but there is no good reason to do so." Waybright v. Frederick County, MD, 528 F.3d 199, 209 (4th Cir. 2008), cert. denied, 129 S.Ct. 725 (2008) (alteration added); see also Farlow v. Wachovia Bank of North Carolina, N.A., 259 F.3d 309, 316 (4th Cir. 2001). We think that is equally true here.

10

III.

In sum, we are persuaded that, under the circumstances here, and for the reasons set forth above, resolution of the important and potentially far-reaching issues of state law presented by this case should be remitted to state courts. Accordingly, the district court should not have maintained jurisdiction over this action upon the early dismissal by the plaintiff of the federal claims. Therefore, the order of the district court entered on January 26, 2009, granting in part and denying in part motions for summary judgment is vacated. This case is remanded to the district court with directions to remand the case to the Superior Court for Wake County, North Carolina. Upon the remand to state court, the state court shall be free to adopt, modify, or reject any and all such orders as may have been previously entered in this action.

VACATED AND REMANDED
WITH INSTRUCTIONS
