CHRISTIE ARRINGTON AS ADMINISTRATOR OF THE ESTATE OF NYLES ARRINGTON AND CHRISTIE ARRINGTON, INDIVIDUALLY, PLAINTIFFS v. ROSALINDA MARTINEZ, AS OWNER OF LA ROSA LINDA'S MEXICAN RESTAURANT, MICHELLE PEELE, INDIVIDUALLY, IN HER OFFICIAL CAPACITY AS AN OFFICER OF THE RALEIGH POLICE DEPARTMENT, AND IN HER CAPACITY AS A SECURITY GUARD WITH LA ROSA LINDA'S MEXICAN RESTAURANT, CITY OF RALEIGH, AND RALEIGH POLICE DEPARTMENT, DEFENDANTS

No. COA10-1204

(Filed 6 September 2011)

1. **Appeal and Error—appealability—partial summary judgment—denial of summary judgment on sovereign immunity**

A City's appeal from the denial of summary judgment on the grounds of sovereign immunity was properly before the appellate court, but the City's appeal of a partial summary judgment on a wrongful death claim was not.

2. **Appeal and Error—standard of review—summary judgment—governmental immunity**

The City's appeal from the denial of summary judgment on a wrongful death claim was reviewed de novo to determine whether the City was entitled to judgment as a matter of law based on governmental immunity.

3. **Immunity—governmental—limited waiver—execution of release required**

A plaintiff with a wrongful death claim did not trigger a waiver of governmental immunity by agreeing to sign releases. The City's limited waiver resolution required that the release be executed.

4. **Immunity—governmental—initial self-insurance with limited waiver—subsequent excess policies**

Despite the existence of insurance policies for damages in excess of the first one million dollars, which defendant city self-insured, there was no genuine issue of fact as to plaintiff's failure to trigger the City's waiver of immunity for the first one million dollars.

ARRINGTON v. MARTINEZ

[215 N.C. App. 252 (2011)]

**5. Appeal and Error—preservation of issues—sovereign immunity—North Carolina constitutional claims—dismissed below—not raised in brief**

Whether claims against a city under the North Carolina Constitution were barred by sovereign immunity was not considered where those claims had been dismissed below and were not before the court, and plaintiff did not include the argument in her brief.

Appeal by defendant City of Raleigh from order entered 11 June 2010 by Judge Donald W. Stephens in Superior Court, Wake County. Heard in the Court of Appeals 10 March 2011.

*The Key Law Firm, by Mark A. Key, for plaintiff-appellees.*

*City of Raleigh Attorney Thomas A. McCormick, by Deputy City Attorney Dorothy K. Leapley and Hunt K. Choi, for defendant-appellant, City of Raleigh.*

STROUD, Judge.

The City of Raleigh ("defendant") appeals from a trial court's order granting in part its motion for summary judgment but denying its "motion for summary judgment . . . based on immunity[.]" For the following reasons, we reverse and remand the trial court's order.

I. Background

Plaintiff, individually and as an administrator of Nyles Arrington's estate, filed a complaint against Rosalinda Martinez, the owner of La Rosa Linda's Mexican Restaurant; Michelle Peele, in her capacity as an officer for the Raleigh Police Department and as security for La Rosa Linda's Mexican Restaurant; the City of Raleigh; and the Raleigh Police Department (collectively referred to herein as "defendants") on 11 December 2006, alleging several claims arising out of the fatal shooting of plaintiff's decedent, Nyles Arrington, by Officer Michele Peele on 28 August 2005. Peele was a full-time law enforcement officer with the Raleigh Police Department working on a part time basis as a "uniformed armed security guard" at La Rosa Linda's Mexican Restaurant. Plaintiff's complaint alleged claims of (1) respondeat superior against La Rosa Linda's; (2) premises liability against La Rosa Linda's; (3) a civil rights violation under 42 U.S.C. § 1983 against all defendants; (4) violations of the North Carolina Constitution, Art. I, Sections 19, 20, 21, 35 and 36 against Peele, the Raleigh Police

Department ("the Police Department") and the City of Raleigh ("the City"); (5) wrongful death against Peele, the Police Department, and the City; (6) negligence in "hiring, retaining, and/or supervising" Peele against the City and Police Department; and (7) punitive damages against all defendants. On 9 January 2007, the City and Police Department gave notice of removal of plaintiff's claim to the United States District Court for the Eastern District of North Carolina pursuant to 28 U.S.C. § 1441(b) based upon plaintiff's claim under 42 U.S.C. § 1983. Thereafter, on 22 January 2007, plaintiff filed in federal court an amended complaint which did not include the 42 U.S.C. § 1983 claim. The other claims were the same as in the original complaint, although the amended complaint made additional allegations as to the third claim under the North Carolina Constitution. Plaintiff did not seek remand to the state court, so the case proceeded in federal court.

The City filed its answer to the amended complaint on 12 February 2007. The City denied plaintiff's substantive factual allegations and alleged 19 separate affirmative defenses. We will not list each affirmative defense raised, as most are not relevant to the arguments in this appeal. The affirmative defense which is pertinent to this appeal is as follows:

TWELFTH DEFENSE

The City of Raleigh is a municipal corporation. Providing police service is a governmental function. The City of Raleigh and its officers, in their official capacity, possess sovereign immunity. The City has not waived its sovereign immunity and this immunity bars Plaintiffs' [sic] claims.

On 10 April 2007, plaintiff voluntarily dismissed all claims against the Raleigh Police Department with prejudice. On 25 March 2008, the District Court granted defendant Peele's motion for judgment on the pleadings, dismissing plaintiff's North Carolina Constitutional claims against her and granted the City's motion for judgment on the pleadings, dismissing plaintiff's North Carolina Constitutional and punitive damages claims against it. The parties conducted discovery in the federal action and two defendants, the City and Peele, moved for summary judgment on 14 July 2008. On 26 January 2009, the United States District Court partially granted the City's motion but denied summary judgment on the City's sovereign immunity defense and denied Peele's motion for summary judgment. Both the City and Peele filed interlocutory appeals as to the denial of sovereign immunity, and

on 5 March 2010, the United States Court of Appeals for the Fourth Circuit issued an opinion which vacated the District Court's summary judgment order and remanded the action to Wake County Superior Court, holding that "the district court should not have maintained jurisdiction over this action upon the early dismissal by the plaintiff of the federal claims[,]" as the case calls for the "resolution of the important and potentially far-reaching issues of state law[.]" *Arrington v. City of Raleigh*, 369 Fed. Appx. 420, 424 (4th Cir. 2010) (unpublished) (per curiam).

Upon remand to Superior Court, Wake County, on 1 April 2010, the City filed a motion for summary judgment. On 3 May 2010, the City filed an amended motion for summary judgment. On 20 May 2010, the Superior Court entered an order recognizing and adopting the "pleadings filed, discovery conducted, and certain orders entered while this action was pending" before the federal court. The trial court adopted

> the U.S. District Court's order on the motions for judgment on the pleadings filed by Defendants Peele and City of Raleigh [thus ordering that] Plaintiffs' claims against Defendant Peele arising under the North Carolina Constitution are DISMISSED with prejudice, Plaintiffs' claims against Defendant City of Raleigh arising under the North Carolina constitution are DISMISSED with prejudice, and Plaintiffs' claims for punitive damages against the City of Raleigh are DISMISSED with prejudice[.]

(Emphasis in original.)

The City's motion for summary judgment was heard on 17 May 2010; by order entered on 11 June 2010, the Superior Court granted summary judgment allowing the City's motion in part, dismissing "all claims asserted by Christi Arrington in her individual capacity against all Defendants[;]" "all claims of negligent hiring, training, supervision, or retention of an incompetent employee" against the City; denying the City's motion "based on a lack of agency and based on immunity[;]" and denying "Defendant Martinez's verbal motion to dismiss[.]" The City timely filed notice of appeal from the 11 June 2010 order which "denied the City's motion seeking summary judgment on grounds of sovereign or governmental immunity."

## II. Interlocutory appeal

[1] We first address the interlocutory nature of the City's appeal. We have stated that

[a]n order is interlocutory if it is made during the pendency of an action and does not dispose of the case but requires further action by the trial court in order to finally determine the entire controversy. There is generally no right to appeal an interlocutory order.

An interlocutory order is subject to immediate appeal only if (1) the order is final as to some but not all of the claims or parties, and the trial court certifies the case for appeal pursuant to Rule 54(b) of the Rules of Civil Procedure, or (2) the trial court's decision deprives the appellant of a substantial right that will be lost absent immediate review.

*Gregory v. Penland*, 179 N.C. App. 505, 509, 634 S.E.2d 625, 628 (2006) (citations and quotation marks omitted). As plaintiff's wrongful death claim, as administrator of Nyles Arrington's estate, against the City, as well as various other claims against defendants Peele and Rosalinda Martinez, have not been resolved, the Superior Court's 11 June 2010 ruling on summary judgment was not a final order and the City's appeal is interlocutory. However, a defendant's appeal from denial of summary judgment on grounds of sovereign immunity is immediately appealable, as "it represents a substantial right[.]" *Craig v. New Hanover County Bd. of Educ.*, 363 N.C. 334, 338, 678 S.E.2d 351, 354 (2009). Accordingly, the City's appeal is properly before us.

III.  Standard of review

**[2]** We have noted that

The entry of summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. Gen. Stat. § 1A–1, Rule 56(c); *see also Johnson v. Beverly–Hanks & Assoc.*, 328 N.C. 202, 207, 400 S.E.2d 38, 41 (1991) (stating that "[i]t is well settled that a party moving for summary judgment is entitled to such judgment if the party can show, through pleadings, depositions, and affidavits, that there is no genuine issue of material fact requiring a trial and that the party is entitled to judgment as a matter of law") (citations omitted). "The party who moves for summary judgment has the initial burden to prove that there are no disputed factual issues[;]" however, "[o]nce the moving party has met this initial burden, the nonmoving party must produce a forecast of evidence demonstrating that he or she will be able to

make out a prima facie case at trial." *Johnson*, 328 N.C. at 207, 400 S.E.2d at 41 (citations omitted).

We review a trial court order granting or denying a summary judgment motion on a *de novo* basis, with our examination of the trial court's order focused on "determin[ing] whether there is a 'genuine issue of material fact' and whether either party is 'entitled to judgment as a matter of law.' " *Stone v. State*, 191 N.C. App. 402, 407, 664 S.E.2d 32, 36 (2008) (quoting *Robins v. Town of Hillsborough*, 361 N.C. 193, 196, 639 S.E.2d 421, 423 (2007)), *disc. review denied and app. dismissed*, 363 N.C. 381, 680 S.E.2d 712 (2009). As part of that process, we view the evidence " 'in the light most favorable to the nonmoving party.' " *Brown v. City of Winston–Salem*, 171 N.C. App. 266, 270, 614 S.E.2d 599, 602 (quoting *Moore v. Coachmen Industries*, 129 N.C. App. 389, 394, 499 S.E.2d 772, 775 (1998)), *cert. denied*, 360 N.C. 60 (2005).

*Kirkpatrick v. Town of Nags Head*, ___ N.C. App. ___, ___ S.E.2d ___, 2011 N.C. App. LEXIS 1375, at *8-10 (N.C. App. July 5, 2011). The City claims that it is entitled to summary judgment because plaintiff's claims are barred by governmental immunity. The City argues that providing police service is a governmental function for which is immune from suit. Although the facts surrounding Officer Peele's shooting of decedent are certainly in dispute, there is no genuine issue of material fact as to the facts which are relevant to a determination of governmental immunity. We will thus review the trial court's order *de novo* to determine whether the city is "entitled to judgment as a matter of law[,]" *see id*, on the grounds of governmental immunity.

## IV. Analysis

[3] The provision of police services is a governmental function which is protected by governmental immunity, although this immunity can be waived in whole or in part.

"As a general rule, the doctrine of governmental, or sovereign immunity bars action against, *inter alia*, the state, its counties, and its public officials sued in their official capacity." *Herring v. Winston-Salem/Forsyth County Bd. of Educ.*, 137 N.C. App. 680, 683, 529 S.E.2d 458, 461 (2000) (citation omitted). The doctrine applies when the entity is being sued for the performance of a governmental function. *Id.* " '[S]uits against public officials are barred by the doctrine of governmental immunity where the official is performing a governmental function, such as providing

police services.' " *Parker v. Hyatt*, 196 N.C. App. 489, 493, 675 S.E.2d 109, 111 (2009) (citation omitted). A town or municipality may waive sovereign immunity through the purchase of liability insurance. *Satorre v. New Hanover Cty. Bd. of Comm'rs*, 165 N.C. App. 173, 176, 598 S.E.2d 142, 144 (2004). However, " '[i]mmunity is waived only to the extent that the [municipality] is indemnified by the insurance contract from liability for acts alleged.' " *Id.* (quoting *Combs v. Town of Belhaven*, 106 N.C. App. 71, 73, 415 S.E.2d 91, 92 (1992)). "A governmental entity does not waive sovereign immunity if the action brought against them is excluded from coverage under their insurance policy." *Patrick v. Wake Cty. Dep't of Human Servs.*, 188 N.C. App. 592, 596, 655 S.E.2d 920, 923 (2008).

*Lunsford v. Lori Renn*, ___ N.C. App. ___, ___, 700 S.E.2d 94, 100 (2010), *disc. review denied*, ___ N.C. ___, 707 S.E.2d 244 (2011).

By statute, a City may, but is not required to, waive governmental immunity. North Carolina General Statutes § 160A-485 sets forth how a City may waive immunity:

(a) Any city is authorized to waive its immunity from civil liability in tort by the act of purchasing liability insurance. Participation in a local government risk pool pursuant to Article 23 of General Statute Chapter 58 shall be deemed to be the purchase of insurance for the purposes of this section. Immunity shall be waived only to the extent that the city is indemnified by the insurance contract from tort liability. No formal action other than the purchase of liability insurance shall be required to waive tort immunity, and no city shall be deemed to have waived its tort immunity by any action other than the purchase of liability insurance. *If a city uses a funded reserve instead of purchasing insurance against liability for wrongful death, negligence, or intentional damage to personal property, or absolute liability for damage to person or property caused by an act or omission of the city or any of its officers, agents, or employees acting within the scope of their authority and the course of their employment, the city council may adopt a resolution that deems the creation of a funded reserve to be the same as the purchase of insurance under this section. Adoption of such a resolution waives the city's governmental immunity only to the extent specified in the council's resolution, but in no event greater than funds available in the funded reserve for the payment of claims.*

(b) An insurance contract purchased pursuant to this section may cover such torts and such officials, employees, and agents of the city as the governing board may determine. The city may purchase one or more insurance contracts, each covering different torts or different officials, employees, or agents of the city. . . .

N.C. Gen. Stat. § 160A-485 (2009) (emphasis added). Here, the Raleigh City Council adopted a resolution waiving governmental immunity to a limited extent, established a self-funded reserve ("SFR") for claims up to $1 million, and obtained insurance for claims above this amount, up to $11 Million ("the resolution"). Specifically, the resolution provides in pertinent part as follows:

## AUTOMOBILE DAMAGE CLAIMS WAIVER OF SOVEREIGN IMMUNITY GUIDELINES ADOPTED[1]

Chairperson Shanahan reported the Law and Public Safety Committee recommends that the Council adopt the following interim policy guidelines on the waiver of sovereign immunity only for those claims or judgments in the range of one cent to one million dollars.

## WAIVER OF IMMUNITY
## INTERIM GUIDELINES

Prior to enactment of final guidelines, the City adopts the following interim policy on the waiver of immunity for claims or judgments in the range of $.01 to $1,000,000.00:

1. The City will waive sovereign immunity and waive immunity for public officials acting in their official capacity only and only to the extent set forth herein.

2. This policy applies only to claims that arose on or after January 1 1998.

3. This policy is intended only to waive the City's immunity in the limited circumstances described herein. This policy is not intended to alter or expand the City's liability, to limit available defenses, to waive immunity from certain types of damages, or to affect any principle of law other than waiver of sovereign immunity and immunity for public officials acting in their official capacities.

---

1. Neither party argues that the resolution's title which refers to "Automobile Damage Claims" has any relevance to this case, although it does not involve "Automobile Damage" in any way. In fact, the City has acknowledged that plaintiff had a potential claim within the terms of the resolution, although limited in amount to $18,325.26.

ARRINGTON v. MARTINEZ

[215 N.C. App. 252 (2011)]

4. The City will waive immunity only for those claims proximately caused by the wrongdoing or negligence of the City or its employee. The City will not waive immunity in any instance in which an affirmative defense exists that would preclude recovery.

5. If a claimant or plaintiff agrees to execute a release of all claims against all persons, firms, and corporations on account of the incident giving rise to the claim, the City will pay for the following damages if proven to be proximately caused by the incident:

A. All property damage;

B. Medical expenses;

C. Chiropractic expenses or physical therapy expenses for no more than three consecutive months during any calendar year;

D. Lost wages for time authorized out of work by physicians licensed to practice medicine in North Carolina;

E. Out of pocket expenses, but no attorney's fees.

The City will not waive immunity for claims or damages for pain and suffering or for any other element of damage not listed above.

The resolution above provided for waiver of immunity as to claims covered by the SFR up to $1,000,000.00. The City had no insurance to cover claims under $1,000,000.00 or in excess of $11,000,000.00. The City had two policies of excess insurance. The policy issued by Genesis Insurance Company covered claims from $1,000,000.00 to $2,000,000.00; the policy issued by the Insurance Company of the State of Pennsylvania provided coverage from claims above $2,000,000.00 up to $11,000,000.00. However, these policies do not provide coverage until and unless the SFR has been exhausted.

Our courts have consistently held that a waiver of sovereign immunity extends only as far as the municipality has determined. In addition, statutes as to waiver of governmental immunity are strictly construed against waiver. *See Hallman v. Charlotte–Mecklenburg Bd. of Educ.*, 124 N.C. App. 435, 438-39 477 S.E.2d 179, 181 (1996); *Overcash v. Statesville City Bd. of Educ.*, 83 N.C. App. 21, 25-26, 348 S.E.2d 524, 527 (1986) (noting that " '[w]aiver of sovereign immunity may not be lightly inferred and State statutes waiving this immunity, being in derogation of the right to sovereign immunity, must be strictly construed.' *Guthrie v. State Ports Authority*, 307 N.C. 522,

537-38, 299 S.E.2d 618, 627 (1983). *See also Floyd v. Highway Commission*, 241 N.C. 461, 85 S.E.2d 703 (1955); *Construction Co. v. Dept. of Administration*, 3 N.C. App. 551, 165 S.E.2d 338 (1969).").
The terms of N.C. Gen. Stat. § 160A-485 make it clear that immunity is waived "only to the extent that the city is indemnified by the insurance contract from tort liability." A City is permitted to determine the extent of its waiver of immunity, as the statutes states that "[a]doption of such a resolution waives the city's governmental immunity only to the extent specified in the council's resolution, but in no event greater than funds available in the funded reserve for the payment of claims." *Id.*

The City argues that it has not waived immunity as to plaintiff's claims because those claims do not fall within the conditions of its limited waiver resolution for several reasons. First, the resolution provides that immunity will be waived and certain types of damages paid only *if* a plaintiff or claimant agrees to certain conditions, including execution of a release. Even then, the City has agreed to pay only specified types of damages. Section 5 of the resolution states that "[i]f a claimant or plaintiff agrees to execute a release of all claims against all persons, firms, and corporations on account of the incident giving rise to the claim, the City will pay for" certain specific types of damages proximately caused by the incident. Thus, the plaintiff has to agree to accept only the specific damages which the City has agreed to pay, and to waive recovery of any additional damages from any other party, in order to receive the benefit of the waiver. The City argues that plaintiff has not executed such a release and has not agreed to limit damages recovered to those specified by the resolution. Instead, plaintiff has itemized the damages sought in discovery responses filed just 13 days prior to the summary judgment hearing as follows:

| | |
|---|---|
| Los[t] Wages: | $620,000.00 |
| Funeral Expenses: | $3[,]210.00 |
| Medical Expenses: | $15,115.68 |
| Out of Pocket Expenses: | $34,242.00 |
| Loss of Consortium: | $500,000.00 |
| Punitive Damages: | $1,512,120.00 |
| Pain and Suffering: | $1,000,000.00 |

It is undisputed that plaintiff has not executed any sort of release of her claims arising out of this incident as to any party. On 5 October 2007, plaintiff answered requests for admissions regarding this issue as follows:

25. You have not executed a release of all claims against all persons, firms, and corporations on account of the August 28, 2005 incident.

RESPONSE: Admitted.

26. You have not agreed to execute a release of all claims against all persons, firms, and corporations on account of the August 28, 2005 incident.

RESPONSE: Admitted.

Plaintiff filed an affidavit on 13 April 2010 in which she alleges that "On this date I agree to execute release of all persons, firms and corporations on account of the incident which is the subject of this litigation for the damages enumerated in the waiver of immunity and to the extent required by the waiver." She claims that her affidavit does not contradict her prior answer to the request of admissions quoted above because "[t]he plain language of the waiver resolution does not require that a claimant agrees [sic] to execute a release during a certain period of time. It does not preclude a person from agreeing to execute a release at the conclusion, in the middle or in the beginning of litigation." She further claims that "I have never refused to agree to execute a release of all claims against all persons, firms, and corporations on account of the August 28, 2005 [sic]." In addition, plaintiff states that she will not execute a release in compliance with the terms required by the resolution, as she states that "[t]his affidavit is not intended to limit any damages in excess of $1,000,000.00 which are covered by any insurance policies in effect at time of this incident." Based upon this affidavit, plaintiff argues before this Court that "[t]he resolution requires that claimants or plaintiff *agree* to execute a release. It does not require the plaintiff to *execute* a release." (emphasis added.)

Plaintiff's argument as to the interpretation of the resolution has no basis in law or logic. Essentially, she claims that she *agrees* to execute a release, but she has not done so and will not actually execute a release until she decides to do so—even as late as the conclusion of this litigation which has already been pending for over four years. Even then, she agrees to execute a release which is not in accord with the terms required by the resolution. Plaintiff's argument overlooks the basic nature of governmental immunity as a defense. Governmental immunity is an immunity from *suit*—not just immunity from having to pay damages at the conclusion of years of litigation. *See Craig*, 363 N.C. at 337-38, 678 S.E.2d at 354 (stating that "[a]s

noted by the United States Supreme Court, such immunity is more than a mere affirmative defense, as it shields a defendant entirely from having to answer for its conduct at all in a civil suit for damages. *See Mitchell v. Forsyth*, 472 U.S. 511, 525, 86 L. Ed. 2d 411, 424 (1985). Thus, unlike affirmative defenses explicitly listed in our Rules of Civil Procedure, *see* N.C.G.S. § 1A-1, Rule 8(c) (2007), the denial of summary judgment on grounds of sovereign immunity is immediately appealable, though interlocutory, because it represents a substantial right, as '[t]he entitlement is an *immunity from suit* rather than a mere defense to liability; and . . . it is effectively lost if a case is erroneously permitted to go to trial.' *Mitchell*, 472 U.S. at 526, 86 L. Ed. 2d at 425."). Waiver of immunity must be established at the outset of a lawsuit. In fact, our courts have held that immunity raises a jurisdictional issue, although it is unsettled as to whether it is personal or subject matter jurisdiction. *See Zimmer v. North Carolina Dept. of Transp.*, 87 N.C. App. 132, 133-34, 360 S.E.2d 115, 116-17 (1987). However, for purposes of this case, it is irrelevant whether immunity implicates personal or subject matter jurisdiction. Because it is a jurisdictional matter, a plaintiff's complaint must affirmatively demonstrate the basis for the waiver of immunity when suing a governmental entity which has immunity. *See Eaker v. Gower*, 189 N.C. App. 770, 774, 659 S.E.2d 29, 32 (2008) (noting that "[w]hen jurisdiction is challenged, plaintiff has the burden of proving prima facie that a statutory basis for jurisdiction exists. The failure to plead the particulars of personal jurisdiction is not necessarily fatal, so long as the facts alleged permit the reasonable inference that jurisdiction may be acquired." (citation omitted)). Plaintiff made the required allegations in her complaint that the City had purchased a policy of general liability insurance and had thereby "waived any applicable immunity defenses in tort[.]" The City, in its answer, denied waiver of immunity and raised immunity as an affirmative defense. Upon discovery, it appeared that the City had not made a wholesale waiver of immunity by purchase of liability insurance, but instead had made a limited waiver as described above, which is specifically permitted by North Carolina General Statutes § 160A-485. We need not set forth a bright line rule that a plaintiff would need to execute a release as required by the resolution prior to filing suit or even within a particular time after filing suit, as here plaintiff has taken the position that she will not ever execute a release in accord with the terms of the resolution. This lawsuit has been pending for over four years and plaintiff has been aware of the resolution's requirements since last 5 October 2007, when in her responses to defendant City's requests for admis-

sion she admits that she had not executed a release as required by the resolution. Under these circumstances, there is no question that plaintiff has not triggered the waiver of immunity as defined by the City's resolution.

**[4]** Plaintiff also argues that the City's purchase of insurance to cover damages in excess of the limited waiver resolution has waived its immunity. Apparently, plaintiff takes the position that she can skip over the first million, which is self-insured by the City by the SFR, and recover only upon the policies which provide excess coverage for damages in excess of $1 million. Although the City has insurance policies which cover claims in excess of $1,000,000.00, the City argues that it has no coverage for plaintiff's claim because the terms of the policies require that the City first pay its entire SFR on a claim before the insurance will provide any indemnification. The Genesis policy reads:

SECTION I—COVERAGE

A.  Insuring Agreement

1. Subject to the applicable **Limit(s) of Insurance** of this Coverage Part, we agree to indemnify the **Insured** for **ultimate net loss** in excess of the **retained limit** which the **Insured** becomes legally obligated to pay because of **bodily injury, personal injury, advertising injury, or property damage** which occurs during this policy period and to which this insurance applies. **Our** indemnification obligation shall not arise until the **Insured** itself has paid in full the entire amount of its **retained limit**. The **retained limit** must be paid by the **Insured**, and may not be paid or satisfied, in whole or in part, by any other source of payment, including but not limited to other insurance, or negated, in whole or in part, by any form of immunity to judgment or liability. No other obligation or liability to pay sums or performance acts or services is covered. . . .

(Bold in original.) The "retained limit" as noted in the agreement, is the City's $1,000,000.00 SFR and is specifically listed on the agreement's "Declarations Page[.]" The definition of "retained limit" contained in the Genesis policy reiterates that

Payment of the **retained limit** may not be satisfied by any other insurance or negated in whole or part by any form of immunity to judgment or liability.

(Bold in original.) Likewise the Pennsylvania policy states the following:

Our duty to pay any sums that **you** become legally obligated to pay arises only after there has been a complete expenditure of **your retained limit** by means of payments for judgments, settlements, or defense costs. **Your retained limit** shall not be exhausted by **your** office expenses, **employees'** salaries, or expenses of any claims servicing organization that you have engaged. **We** will then be liable only for that portion of damages in excess of **your retained limit** up to our Limits of Insurance.

The Pennsylvania policy required an "expenditure" of the City's $2,000,000.00 retained limit "by means of payments for judgments, settlements, or defense costs before providing indemnification.

Plaintiff's position is that she should be able to benefit from the City's SFR and insurance for all types of damages she claims and also to preserve her rights to recover against other potentially liable parties. Plaintiff argues that the City "cannot arbitrarily and capriciously prohibit parties from recovering under its laws." Yet plaintiff has not presented any legal basis for claiming that the City's SFR and insurance coverage are arbitrary or capricious. North Carolina General Statutes § 160A-485(a) provides that a municipality *may* purchase insurance coverage and *may* waive its immunity to whatever extent it determines appropriate. It may also elect not to waive its immunity at all, in which case plaintiff would have no possibility of any recovery from the City. Based on the City's limited waiver, the City has acknowledged that plaintiff would be entitled to recover $18,325.68 for medical and funeral expenses from the SFR, for damages permitted by the resolution as documented by bills provided by plaintiff in discovery. In fact, the City tendered a check in this amount to plaintiff on or about 3 May 2010, in conjunction with a Release and Settlement Agreement, but she declined to execute the release or accept the check. There is thus no genuine issue of material fact as to plaintiff's failure to trigger the City's waiver of immunity, and the trial court erred in denying the City's motion for summary judgment as to governmental immunity.

**[5]** We recognize that not all claims against the sovereign are barred by governmental immunity. In particular, our Courts have determined that some types of claims under the North Carolina constitution are not barred by governmental immunity. *See Craig*, 363 N.C. at 338, 678 S.E.2d at 354 (stating that "[i]n the absence of an adequate state remedy, one whose state constitutional rights have been abridged has a direct claim against the State under our Constitution." (quoting *Corum v. University of North Carolina Through Bd. of Governors*,

330 N.C. 761, 782, 413 S.E.2d 276, 289, *cert. denied*, 506 U.S. 985, 121
L. Ed. 2d 431 (1992)). Plaintiff's complaint did include a claim under
the North Carolina Constitution against Peele and the City. However,
we will not address this potential constitutional issue for two rea-
sons. First, the superior court entered an order dismissing plaintiff's
constitutional claims on 20 May 2010, so at this point these claims are
not before the court. *See Little v. Wachovia Bank & Trust Co.*, 252
N.C. 229, 243, 113 S.E.2d 689, 700 (1960) (stating that "[t]he courts
have no jurisdiction to determine matters purely speculative, enter
anticipatory judgments, declare social status, deal with theoretical
problems, give advisory opinions, answer moot questions, adjudicate
academic matters, provide for contingencies which may hereafter
arise, or give abstract opinions." (citation omitted)). In addition,
plaintiff has not argued or even mentioned in the record or her brief
as an alternative basis for the trial court's denial of summary judg-
ment the theory that the City's governmental immunity may not be
applicable to her constitutional claims.[2] North Carolina Rule of
Appellate Procedure 28(c) states that "[w]ithout taking an appeal, an
appellee may present issues on appeal based on any action or omis-
sion of the trial court that deprived the appellee of an alternative
basis in law for supporting the judgment, order, or other determina-
tion from which appeal has been taken . . . ." N.C.R. App. P. 28(c); *See
also* N.C.R. App. P. 10(c) (stating that "[w]ithout taking an appeal, an
appellee may list proposed issues on appeal in the record on appeal
based on any action or omission of the trial court that was properly
preserved for appellate review and that deprived the appellee of an
alternative basis in law for supporting the judgment, order, or other
determination from which appeal has been taken. . . . ."). We believe
that in the absence of argument by either party on the issue of the
applicability of governmental immunity to plaintiff's constitutional
claims, it is not appropriate for us to address it. Our Supreme Court
noted in *Viar v. N.C. DOT* that we are not to review issues "not raised
or argued by" the appellant. 359 N.C. 400, 402, 610 S.E.2d 360, 361
(2005) (per curiam). Although *Viar* addresses violations of the appel-
late rules, here we are not confronted by a rule violation, and we
believe that in the absence of a rule violation, it is even less appro-
priate for us to presume to create arguments for the parties. In
*Kirkpatrick v. Town of Nags Head,* —— N.C. App. ——, —— S.E.2d ——,
2011 N.C. App. LEXIS 1375 (N.C. App. July 5, 2011), this Court

---

2. It is apparent that the trial court did not base its denial of summary judgment
upon the existence of plaintiff's constitutional claim, as it had previously dismissed
this claim.

**ARRINGTON v. MARTINEZ**

[215 N.C. App. 252 (2011)]

recently considered a similar issue regarding the existence of sovereign immunity upon the municipality's appeal of an order denying summary judgment. Yet, there the plaintiff did argue an alternative basis for the trial court's order: "On the other hand, Plaintiffs argue that their challenge to Judge Tillett's implicit determination is properly before this Court as an alternate ground for sustaining the trial court's order as authorized by N.C.R. App. P. 10(c) and N.C.R. App. P. 28(c)". *Kirkpatrick*, 2011 N.C. App. LEXIS 1375, at *11. As noted by the Fourth Circuit Court of Appeals, this issue is an "important and potentially far-reaching issue[] of state law[,]" *see Arrington*, 369 Fed. Appx. at 424, and we decline to address it where neither party has so much as mentioned it.

We thus conclude "that there is no genuine issue of material fact concerning the extent to which Defendant is entitled to rely on a defense of governmental immunity in opposition to Plaintiff['s] claim, that Defendant is entitled to judgment as a matter of law with respect to that defense, and that the trial court erred by reaching a contrary conclusion. As a result, the trial court's order should be, and hereby is, reversed and this case should be, and hereby is, remanded to the [Wake] County Superior Court with instructions that judgment be entered in favor of Defendant." *Kirkpatrick*, 2011 N.C. App. LEXIS 1375, at *31.

REVERSED AND REMANDED.

Judges HUNTER, JR., Robert N. and THIGPEN concur.